W. F. HAMPTON et al., Plaintiffs in Error, v. WILLIAM RATHER.

1. The rule in *Shelly's case*, so far as personal property is concerned, has not been abolished, but still exists in this state, and will be applied, whenever it expressly or plainly appears from the instrument creating the estate, that it was the intention of the grantor, by the use of the words "heirs," "heirs of the body," "issue," &c., to designate a class or denomination of persons to take the inheritance in succession, from generation to generation, in their character, as heirs of the ancestor.

2. The 26th section of the statute concerning conveyances, Hutch. Dig. 610, which provides that, "every contingent limitation in any deed or will, made to depend upon the dying of any person without heirs, or heirs of the body, or without issue, or issue of the body, or without children or offspring, or descendant, or other relative, shall be held and interpreted a limitation, to take effect when such person shall die, not having such heir, or issue, or child, or offspring, or descendant, or other relative (as the case may be,) living at the time of his death, or born to him within ten months thereafter; unless the intention of such limitation be otherwise expressly and plainly declared on the face of the deed or will creating it," was not intended to introduce new, or render valid, limitations not theretofore recognized by the courts, but was designed simply to lay down a certain, intelligible, and uniform rule of construction, by affixing to certain words used in deeds and wills, a definite and fixed signification, different from that which had previously been affixed to them by the courts.

3. A deed of gift of slaves " to A., for and during her natural life, and then to the heirs of her body forever," under the operation of the rule in *Shelly's case*, vests a fee-simple estate to the slaves in A.

VOL. I.—13

Hampton et al. *v.* Rather.

In error from the Circuit Court of Carroll county. Hon. William L. Harris, judge.

The plaintiffs in error, as heirs of William Hampton, deceased, sued the defendant in error in replevin, for the recovery of a slave, Patience, and her increase. The defendant in error was the surviving husband of Martha K. Irby, who had departed this life in the year 1853. The plaintiffs claimed title under the following deed, executed by William Hampton:—

"*State of Mississippi,* } Holmes county.

"This indenture, made this fifth day of February, A. D. 1842, by and between William Hampton, of the county and state aforesaid, of the first part, and Martha K. Irby, the lawful wife of Charles Irby, of the county of Yazoo, and state aforementioned, of the second part, witnesseth, that the said William Hampton, as aforesaid, as well for and in consideration of the natural love and affection, which he, the said William Hampton, hath and beareth unto the said Martha K. Irby, his daughter, as also for the better maintenance, support, and livelihood of her, the said Martha K. Irby, hath given, granted, aliened, enfeoffed, and confirmed unto the said Martha K. Irby, and the heirs of her body forever, all and singular the following property, to wit: one negro woman slave, for life, aged about fourteen years, named Patience, and all her future increase; and also all the rents, profits, and labor, arising now and hereafter to her, the said Martha K. Irby, during her natural life, and then to the heirs of her body, as aforesaid."

Then follow stipulations that said Martha shall have the slave as her separate estate, free from the control or management of her husband, and a covenant of warranty of title.

By agreement, the cause was submitted in the court below, upon the construction of this deed. Judgment was rendered in favor of Rather, and the plaintiffs sued out this writ of error.

*W. Brooke,* for plaintiffs in error.

By consent of counsel filed in the papers, the informality of this

suit being brought in the name of the heirs of William Hampton, deceased, instead of his administrator, is waived, and a decision sought on the merits, arising out of the limitations contained in the deed of gift, set out in the record.

It is manifest that the grantor intended only to invest his daughter, then Mrs. Irby, with an estate for life in the negro woman Martha, and her increase. "During her natural life, and to the heirs of her body," are the words used. Does the use of these words bring the instrument within the operation of the rule in *Shelly's case*, so as to vest in the donee an estate in fee? We think not. The principle established in the case of *Powell* v. *Brandon*, 2 Cushm., is that our statute (Hutch. Code, § 26, 610,) does not entirely abolish the rule in *Shelly's case*, but leaves it in operation, where the intention of the grantor to create a perpetuity, is manifested by his specifying a class or denomination of persons to take the inheritance in succession from generation to generation, in their character as heirs of the ancestor. That the simple use of the words heirs or heirs of the body, does not of itself manifest such intention, is plainly shown by that case, and by the section of our statute referred to. See also *Kirby* v. *Calhoun.* There must be some other expression in the deed or will, from which the intention is to be deduced, or the rule in *Shelly's case* fails in its application. Accordingly, we find in the case referred to, wherein the "rule" was applied, that after the decease of M. N. Brandon, the first taker, the estate was to continue to "the lineal descendants of said Matthew N., to the latest posterity." In the case at bar, no words of like import are used, but the limitation after the death of Mrs. Irby, is simply to the heirs of her body forever—a limitation that is expressly saved by the 26th section of our act before quoted. The word "forever" is simply used in the sense in which it is ordinarily used in conveyances as descriptive of a fee simple estate. Connected with the word heirs or heirs of the body, it indicates the intention of vesting the fee in them, which would have been the case, had there been any heirs or children of Mrs. Irby. They would have taken the fee, and she only the life estate. The only difference between this case and that of *Kirby* v. *Calhoun*, 8 S. & M. is, that in the latter,

the person is pointed out who is to take in the event of failure of issue or heirs of the body. This is no difference in principle or in reason. The failure to name such a taker could not affect the quality of the estate in the first taker, so as to enlarge it from a life estate to a fee. In the event of such a failure, the law supplies an owner, and that is the original grantor or his heirs, to whom the estate necessarily *reverts* on the failure of them in remainder. Mrs. Irby died without issue by either of her husbands, and having only a life estate in the negroes in controversy, these negroes, by operation of law revert to the heirs of the original grantor, who are now claiming them. See 1 Call, 340; 2 Ib. 314; 3 Ib. 50; 4 T. R. 299; Fearne, 37.

"Heirs or heirs of the body," in a deed of personalty, are construed to be words of purchase. 3 Call, 50; *Dedlabe* v. *Hooper*, Gil. 194.

The use of the word "forever" in conveyances, is very common, and never was considered as indicative of an intention to create an estate tail, or any other kind of perpetuity. In England, where perpetuities are allowed to some extent, a conveyance to one and his heirs forever, only carries a fee simple. The word is mere surplusage, and has no effect whatever. This case then stands precisely on the footing of that of *Kirby* v. *Calhoun*, before cited.

*J. Z. George*, for defendant in error.

1. The deed conveys an absolute estate in fee to Mrs. Irby. By the rule in *Shelly's case*, where a person takes an estate of freehold legal or equitable, under a deed or will or other writing, and afterwards in the same deed, will or writing, there is a limitation by way of remainder, with or without the interposition of any other estate, of an interest of the same quality as legal or equitable, "to his heirs generally, or the heirs of his body, by that name, in deed or writings of conveyance, and by that, or some such name in wills, and as a class or denomination of persons to take as succession from generation to generation, the limitation to the heirs will entitle the person or ancestor himself, to the estate or interest imported by that limitation," or more concisely, "if by any instrument a freehold be limited to the ancestor for life, and the inheritance to

his heirs, either mediately or immediately, the first taker takes the whole estate. 1 Preston, Est. 263, 264, 265.

This rule, strictly speaking, applies only to real estate, because technically, there cannot be an estate of inheritance in personalty. But there is a similar rule applicable to personalty, and which for all practical purposes, may be designated as the rule in *Shelly's case.*

" Heirs," *as such,* cannot take personal estate, because it cannot descend; yet the word being a technical word of limitation and of extension, that meaning is given to it in construing limitations of personal as well as of real property, unless the party shows he used it in another sense, and this he cannot do, except by showing that he did not intend to include all the heirs. Keyes, Chat. § 190. The word, " heirs," then, in limitations of personal property, as well as of real, is a word of limitation, and not of purchase; and this is always its construction, unless there be other controlling words, showing a contrary intention. 8 Humph. 633. And it makes no difference, however strong the intention may be, that the first taker should have only a life estate, indicated by the use of the words, " for his natural life," and " during his natural life," and words of like import; yet, if it be manifest that the " heirs" were to take in their character of heirs, and as a class or denomination of persons in succession from generation to generation, and not as a new stock or root of inheritance, the word " heirs" will be construed as a word of limitation, and as vesting the inheritance in the first taker. 8 Humph. 633; *Elton* v. *Eason,* 19 Ves. 73; *Ewing* v. *Standifer,* 18 Ala. R. 400; 15 Ib. 373, 667. The criterion for construction is not, which estate the grantor intended to vest in the first taker, but in what character did he intend that the heirs should take the remainder; whether as heirs of the ancestor, or as a new stock or root of inheritance. It is clear, therefore, that by the common law, Mrs. Irby took an absolute estate in the slaves.

But it is insisted, that the rule in *Shelly's case,* has been so far modified by our legislature, Hutch. Code, 610, § 26, as to take this case without its operation. That statute, I think has no just influence on the case. By the common law, conditional limitations and executory devises made to depend upon a person's dying

without issue, heirs, &c., were held to be void on account of the remoteness of limitations. This result was reached by the uniform construction placed by the courts upon the phrases, "dying without issue, dying without heirs," &c., &c., holding that such phrases meant an indefinite failure of issue, heirs, &c., and not such failure of issue, &c., living at the death of the first taker, whereby, in most cases the limitation was defeated. 4 Kent. Com. 273, 276. The courts, in order to effectuate what in most cases seemed to be the intention of the grantor or testator, seized upon slight expressions in the deed or will, to obviate the operation of this rule of construction, by holding that in cases where such expressions were used, a failure of issue living at the death of the first taker was intended. This gave rise "to endless discussion, and much painful learning, and still more painful collision of opinion," until this branch of the law had become involved in almost inextricable confusion and uncertainty. See 4 Kent, 281.

Such was the state of law at the passage of the act, and such the mischief intended to be remedied. The legislature therefore declared, that "every contingent limitation in any deed or will, made to depend upon the dying of any person without heirs, or heirs of the body, &c., shall be *held and interpreted* a limitation, to take effect when such person shall die, not having heirs, issue, &c., living at the time of his death, or borne to him within ten months thereafter," unless the intention of such limitation be otherwise plainly and expressly declared. Hutch. Code, 610, § 26.

Thus was effected, by legislation, a complete reversal of a common law rule of interpretation or construction. It would seem that the legislature intended nothing more, than to substitute a new rule for the interpretation of certain words or phrases, instead of the one previously existing, which had proven unsafe and unsatisfactory, and the cause of much perplexing contrariety of opinion.

But it is said, that the previous adjudications of this court have sanctioned the position, that the rule in *Shelly's case* has been modified by this 26th section. There have been three decisions of this court on this subject.

The first, *Carroll* v. *Renich*, 7 S. & M. 798, was a Tennessee case, and decided according to Tennessee law, and is consequently of no authority, but Judge Clayton intimated an opinion, that the rule in *Shelly's case* was repealed by the proviso to the 24th section, Hutch. Code, 609, and not by the 26th section, now under consideration.

The case of *Kirby* v. *Calhoun*, 8 S. & M. 462, is the next. This case arose upon the construction of a deed, in which there was a contingent limitation over, dependent upon the death of Mrs. Calhoun without issue; and the court decreed that the 26th section made this a failure of issue living at her death, and not an indefinite failure, and therefore good.

In the case of *Powell* v. *Brandon*, 2 Cushm. 343, Judge Yerger decided, in substance, that the 26th section did operate to make the word "heirs" a word of purchase, and not of limitation, in case of contingent limitations, unless the meaning of the testator or grantor plainly and expressly appeared to the contrary, but that wherever it appeared that the heirs were to take as a class or denomination of persons in succession, from generation to generation, this contrary intention was manifested. The court will recollect that that case, as well as the one of *Kirby* v. *Calhoun*, was upon the construction of instruments, in which there was a contingent limitation over, made to depend upon the death of the first taker without issue, so as to bring them within the words of the 26th section. But in the case at bar there is no limitation over dependent upon failure of the heirs of Mrs. Irby, and consequently, there is no necessity to resort to the statute to get an interpretation of the phrases, "dying without heirs," &c. I insist, then, that the case of *Powell* v. *Brandon* does not decide that, in cases like the one under consideration, the rule in *Shelly's case* is modified.

If the court should be of opinion that the case of *Powell* v. *Brandon* establishes the doctrine, that in all cases where the rule in *Shelly's case* may legally apply, it has been so modified by the 26th section, as to make the word "heirs" a word of purchase, and not a word of limitation, unless it appear from the instrument that a contrary meaning was intended, then I claim the

benefit of that case, to show that such contrary intention is manifested in this case. That case decides, that wherever it appears plainly, from the instrument, that the heirs were to take in their character of heirs, and not as a new stock or root of inheritance, the rule in *Shelly's case* will apply, and vest the inheritance in the first taker. There, the gift was to "Brandon, for and during his natural life, and then to his lineal descendants, to the remotest posterity;" and the court held that the limitation "to his lineal descendants, to the remotest posterity," indicated, plainly, that the intention of the testator was, that the descendants should take in their character as heirs of the body of Brandon, as a class or denomination of persons in succession, from generation to generation. Here, the gift is "to Martha K. Irby, for life, and then to the heirs of her body forever." Is it not more manifest in this case, that the grantor intended that the heirs should take in their character of heirs? "Lineal descendants" at common law, were words of purchase, ordinarily, and the words, "heirs of the body," words of limitation. But, suppose they are of the same legal value, then one may be used indifferently for the other. The deed might then read, "I give to Martha K. Irby for life, and then to her lineal descendants forever." "Remotest posterity," in this connection, can mean neither more nor less than the word "forever;" for the lineal descendants can only take as long as they exist, and they can take forever, if they so long exist. So that there is no appreciable difference between the two cases; and as the court held in *Powell* v. *Brandon*, that the first taker took an absolute estate, so it must in this case.

SMITH, C. J., delivered the opinion of the court.

This case comes before us upon an agreed state of facts. William Hampton conveyed, by deed of gift, to his daughter, Mrs. Martha K. Irby, "and the heirs of her body forever," a certain female slave and her natural increase. Mrs. Irby took possession, under the deed, of the said slave, which, together with two children, her natural increase, are the subject of this suit. Irby, the husband of the donee, died, and his widow intermarried with the defendant in error, and died, never having had issue by either

marriage.   The suit was instituted by the heirs of the donor, from which it may be inferred that he had also died, but there is nothing in the record to show whether his death occurred before or after that of the donee.

From this statement, it is manifest that the right of recovery on the part of the plaintiffs, must depend, exclusively, on the character of the estate which vested, by operation of the deed, in Mrs. Irby.   For it is certain, that if she acquired an estate in fee in the property donated, they can found no claim to recover as the heirs of the donor, whatever may be the title of the defendant.

What, then, was the character of the interest which vested in Mrs. Irby ?   Was it only a life estate, which, upon its termination at her death, without heirs of her body, reverted to the donor, or his representatives ?

It is insisted by counsel, that the intention of the grantor to vest in his daughter but an estate for and during the term of her natural life, is perfectly evident from the terms of the instrument; and hence it is contended, that the limitation over, by the use of the words " heirs of her body," does not bring the case within the operation of the rule in *Shelly's case*, as that rule has been modified by the legislature, and expounded and applied by the courts of this state.

In our opinion, the terms of the instrument in question are precisely such as, if employed under the rule in reference to real property, would convey an estate in fee-tail; and consequently the whole interest in personal property.   1 Prest. Est. 264; 1 Madd. 288; 1 P. Wms. 208; 3 Ib. 258; Fearne, Rem. 463; 4 Kent, Com. 229.   The 24th section of the statute concerning conveyances, Hutch. Dig. 609, which provides, that " every estate in lands or slaves, which now is, or shall hereafter be created an estate in fee-tail, shall be an estate in fee-simple; and the same shall be discharged of the conditions annexed thereto by the common law, restraining alienations before the donee shall have issue, so that the donee, or the person in whom the conditional fee is vested or shall vest, shall have the same power over the said estates as if they were pure and absolute fees : Provided that any person may make a conveyance or devise of lands to a succession of donees

then living, and to the heir or heirs of the body of the remainder-man, and in default thereof to the right heirs of the donor in fee-simple," determines this controversy, unless the 26th section of same act has not only rendered the rule in *Shelly's case* inapplicable to the instrument under consideration, but has also rendered nugatory the provisions of the section above quoted.

The 26th section provides that, " every contingent limitation in any deed or will, made to depend upon the dying of any person, without heirs or heirs of the body, or without issue or issue of the body, or without children or offspring, or descendants, or other relative, shall be held and interpreted a limitation to take effect when such person shall die, not having such heirs, or issue, or child, or offspring, or descendant, or other relative (as the case may be,) living at the time of his death, or born to him within ten months thereafter; unless the intention of such limitation be otherwise expressly and as plainly declared, on the face of the deed or will creating it."

The provisions of this section, which we have quoted at length, have been, in three cases heretofore decided in this court, the subject of construction. In the last of these, that of *Powell* v. *Brandon*, 24 Miss. Rep. 343, the court was careful to remark, that in its opinion the decisions previously made did not in the slightest degree conflict with the views therein expressed. In the first of the cases referred to, *Carroll* v. *Renich*, 7 S. & M. 798; the question grew out of a contract made in Tennessee; and was decided exclusively with reference to the laws of that state. But an opinion or a belief was expressed, that the statute had changed the rule in *Shelly's case*, " and relieved it from the intricacy and embarrassment which perplexed the common law, and involved it in minute and subtle distinctions and refinements."

In the next case—*Kirby* v. *Calhoun*, 3 S. & M. 462—in which the rule in *Shelly's case* was the subject of comment, as the facts are materially different from those in *Powell* v. *Brandon*, it may well be said, that there is no necessary conflict between the judgments in the two cases; but we apprehend it would be impossible to reconcile the views expressed in the opinions in those cases, in

reference to the question, how far the statute has abolished or modified that rule.

In *Kirby* v. *Calhoun*, the case was put exclusively on the statute, and the belief or opinion announced in *Carroll* v. *Renich*, that the statute of this state had changed the rule on this subject, was deliberately adhered to. The court further say ; "In Virginia, we find the original of this statute word for word. A late learned commentator on the laws of that state, shows that this provision extends equally to deeds and to wills ; to personal and real estate, except where the use of the personalty involves its consumption as a consequence. He concludes by saying, 'under this rule of construction, it will be difficult to conceive a case of limitation, after the failure of issue, which can be considered now to be an estate tail;'" citing Lomax, Dig. 212, 296.

By a principle of the common law, known as the rule in *Shelly's case*, as defined by Mr. Preston, "when a person takes an estate of freehold, legally or equitably, under a deed or will or other writing, and afterwards in the same deed or will, or other writing there is a limitation by way of remainder, with or without the interposition of any other estate, of an interest of the same quality, as legal or equitable, to his heirs generally, or his heirs of his body ; by that name in deeds or writings of conveyance, or by that or some such names in wills, and as a class or denomination of persons to take in succession from generation to generation ; the limitation to the heirs will entitle the person or ancestor himself, to the estate or interest imported by that limitation. 1 Preston on Est. 264.

This rule is, in *Powell* v. *Brandon*, expressly recognized, as of force within this state, as a principle of the common law, except so far as it may have been repealed or changed by the statute.

But in the application of this rule, the difficulty of determining whether words used in such conveyances as "heirs, issue, heirs of the body, offspring, lineal descendants," &c., were to be understood and held as words of limitation, or as a designation of a class of persons to take as heirs of the ancestor ; or, on the other hand, as words of purchase, intended to designate particular persons as individuals to take in their own right, gave origin to numerous

controversies. The courts at length and with great unanimity decided, that those words, in their proper and legal import, embraced any heirs of the given description collectively as a class of persons, unless there was an intention directly and plainly expressed to the contrary. If, however, such contrary intention plainly appeared, the rule was not so inflexible as to control that intention, if it did not infringe upon the reason on which the rule itself was based, and steered clear of its literal terms. 1 Prest. on Est. 275, 278, 279. The very great amount of litigation which arose from that source, is sufficient to show the extreme difficulty which existed, in determining what words and expressions were sufficient to indicate a direct intention to limit and control the usual meaning which had been attached by the courts to these words. 1 Prest. on Est. 279.

In *Powell* v. *Brandon*, say this court, " to obviate this acknowledged difficulty ; and by giving a fixed and positive definition to these words, in consonance with, what in most cases seemed to be the wish and intention of the party using them, and thus to cast off a fruitful source of litigation, occasioned, as we conceive, the enactment of the section" above quoted. And in the same case, in response to the argument of counsel on the question of the repeal of the rule by the statute, it was said that, " by reference to the 24th section, (which we have above quoted at length,) it will be found, we think, to have little if any bearing upon the question. The object of that section, was to abolish entails in both real estate and slaves, whether conveyed by deed or devise, and the proviso contained in the section, has exclusive relation to a conveyance or devise of real estate ; and cannot therefore have any influence upon the construction, which must be placed upon a devise or conveyance of slaves." "A more difficult question" continue the court, " is presented for consideration by the 26th section," in reply to which the court say, " we do not think it was the intention of the legislature, to declare that in every case where the words ' heirs,' ' heirs of the body,' &c., were used, they should be construed words of purchase and not of limitation, even should it appear from the instrument, that such was not the sense or meaning of the party using them. This we think is clear

from the language of the act itself, which simply declares that these words, when used in the cases referred to, shall have a certain definition or meaning ; unless the intention of such limitation be otherwise expressly and plainly declared on the face of the deed or will creating it. From this exception, contained in the law, the inference seems to be irresistible, that if such intention does so appear, then the words shall not have the meaning or signification affixed to them by the statute, but should receive that definition which the common law affixed to them, and which the party intended to give. In our opinion, therefore, the rule in *Shelly's* case, so far at least as personal property is concerned, has not been abolished, but still exists in this state, and will be applied whenever it expressly or plainly appears, from the instrument creating the estates, that it was the intention of the grantors by the use of the words ' heirs,' 'heirs of the body,' 'issue' &c., to specify a class or denomination of persons, to take the inheritance in succession, from generation to generation, in their character as heirs of the ancestor."

The section itself is a legislative recognition of the existence of the rule; and it is equivalent to a declaration that it should be applied in all cases in which, under the operation of the statute, it could, according to settled doctrine, be applied.

It seems clear that it was not the intention of the legislature, by the adoption of the 26th section, to introduce new, or render valid limitations upon a contingency not theretofore recognized by the courts, as it must be construed in reference to the 24th section of the same act, whose object was to free property from the fetters of entailment. It does not even declare that a limitation over upon a person's " dying without issue living at the time of his death," should be good. The reason is obvious : such limitation was already good at common law; but which had declared that the words " dying without issue," meant an indefinite failure of issue, and not issue living at the time of the death. It would seem, therefore, not to admit of doubt that the 26th section was designed simply to lay down a certain, intelligible, and uniform rule of construction, by affixing to certain words used in deeds and wills a

definite and fixed signification, different from that which had there-tofore been attached to the same words by the courts.

The question then comes up ; whether and how far the rule has been abolished or modified by the 24th section ?

The manifest and declared object of that section, was to abolish entailments in respect to lands and slaves, or to raise them to the dignity of estates in fee simple. The proviso has exclusive reference to conveyances and devises of lands ; and we concur with the court in *Powell* v. *Brandon,* that it can have no " influence whatever upon the construction which must be placed upon a devise or conveyance of slaves." The language of the proviso is definite and intelligible, and the boundaries of the limitations therein sanctioned are marked with unmistakable certainty. Whenever the rule in *Shelly's case* is in conflict with its provisions, it is useless to say that the former has been abolished. A conveyance or a devise which comes within the terms of the proviso must stand upon the statute unaffected by any principle of the common law ; but we have said the proviso refers exclusively to conveyances and devises of real estate ; and hence does not apply to the question involved in this case.

Let the judgment be affirmed.