EDWARDS P. SANDS *vs.* OLD COLONY TRUST COMPANY.

Suffolk.     March 14, 1907. — May 16, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Trust,* Settlement, Revocation.     *Deed,* Construction.     *Rule in Shelley's Case.*

In this Commonwealth, in the construing of trusts created by settlements of personal property, whether they are executed voluntarily or upon a valuable consideration, there is no inflexible rule of law requiring the application of the rule in *Shelley's case* that when an ancestor takes by an instrument of gift or conveyance a freehold estate and in the same instrument there is a limitation to heirs, the word " heirs " is a word of limitation and not of purchase, and the first taker takes an estate of inheritance ; but the intention of the settlor as expressed in the instrument should be ascertained and carried out.

A deed of settlement conveyed personal property to a trustee and gave him power to sell, invest and reinvest at his discretion, paying to the settlor the net income of the fund and such parts of the principal as in the trustee's discretion would be warranted by the circumstances of the settlor or of his family or business, the fund, after the settlor's death, to be paid to his heirs or, if he left a will, to his executors or other successors. There was no clause of revocation. The settlor petitioned for a revocation of the trust, contending that its purposes had been accomplished, and that, under the rule in *Shelley's case,* the sole and absolute equitable title to the fund was vested in him. *Held,* that the rule in *Shelley's case* did not apply as an inflexible rule of law, but that the intention of the settlor as shown in the deed, to give irrevocably to the trustee full control of the fund during the settlor's life, must prevail.

PETITION in the Probate Court for the county of Suffolk for revocation of a settlement of personal property in trust, filed November 25, 1905.

In the Probate Court a guardian *ad litem* or next friend was appointed to represent the interests of persons then unborn or unascertained and made a report objecting to a revocation of the settlement, and a decree was entered dismissing the petition.

On appeal there was a trial before *Rugg*, J., who reserved the case upon the pleadings and agreed statement of facts for consideration and determination by this court.

It appeared from the agreed statement of facts that the plaintiff, when of full age and unmarried, executed and delivered to the defendant an instrument under seal by the terms of which he did "give, grant, bargain, sell and convey unto" it certain stocks and securities, "to have and to hold to the said trust company, its successors and assigns forever, in trust nevertheless for the following purposes:

"1. To hold and invest or reinvest the whole or any part of the property hereby conveyed as from time to time shall seem to it advisable, and I hereby authorize said trust company to sell any part or all of any securities, which are or may become a part of this fund, by public auction or private sale for such consideration and on such terms as it shall deem expedient.

"No purchaser from said trust company shall have any responsibility as to the application of the proceeds of any such sale.

"Said trustee shall have absolute power to invest and reinvest said fund in such securities as it may see fit, having regard to the permanent safety of the principal, but where possible selecting those yielding a larger income than is ordinarily expected of trustee's investments.

"2. To pay the net income from said fund to me or to my order during my life by quarterly payments as nearly equal as may be; and in the discretion of my trustee when the circumstances of myself or my family or business seem to warrant to pay me or my order such portion of the principal as it may see fit.

"Upon my death to pay the balance of said principal fund and any income on hand to my legal heirs, provided however I have not disposed of the same by will. And I hereby except and reserve full power to dispose of the principal of said fund and any unpaid income by will. And in case of my death leaving a will, I hereby authorize and direct said trust company, its successors or assigns to pay at once to the executor or executors named in my will or to his other successors all the principal and income then in their possession or control."

The instrument contained no express clause of revocation.

Subsequently the petitioner married, notified the respondent that he wished to revoke the trust and demanded a return of the property conveyed.

*F. E. Barnard,* for the plaintiff.

*A. N. Frost,* for the defendant.

SHELDON, J. It is established in this Commonwealth that a voluntary settlement, which has been fully executed without the reservation of any power of revocation, cannot be revoked without proof of mental unsoundness, mistake, fraud or undue influence. The absence of a power of revocation creates no presumption against the validity of the settlement. *Lovett* v. *Farnham,* 169 Mass. 1. *Taylor* v. *Buttrick,* 165 Mass. 547. *Thurston, petitioner,* 154 Mass. 596. *Keyes* v. *Carleton,* 141 Mass. 45, 49. *Sewall* v. *Roberts,* 115 Mass. 262. *Viney* v. *Abbott,* 109 Mass. 300. But a court of equity may decree the determination of a trust where all its purposes have been accomplished, the interests under it have all vested, and all parties beneficially interested desire that it be ended. *Gannon* v. *Ruffin,* 151 Mass. 204, 207. *Sears* v. *Choate,* 146 Mass. 395. *Stone, petitioner,* 138 Mass. 476.

The plaintiff's contention is that his case comes within the latter principle. By the terms of the trust deed which he executed, he transferred to the trustee therein named certain shares of stock, to be held by it, with power to sell, invest and reinvest at its discretion, and to pay the net income to him during his life and also to pay to him such portion of the principal as in its discretion the circumstances of himself or his family or business should seem to warrant; and after his death to pay over the fund to his heirs unless he should have left a will, and in that case to pay it to the executors named in his will or to his other successors. He now claims that the effect of these terms and limitations is to give to him the sole and absolute equitable title to the trust fund; that this is the result of the rule in *Shelley's case,* 1 Co. 219, that this rule is now to be applied to limitations of personal no less than of real estate; that in this Commonwealth the rule has been abrogated only as to real estate, and remains in full force as to personal property; and accordingly that he has a right to have the trust terminated and the trust

fund paid over to him.   See, besides the cases already cited, *Inches* v. *Hill*, 106 Mass. 575; *Bowditch* v. *Andrew*, 8 Allen, 339; *Smith* v. *Harrington*, 4 Allen, 566.

The rule in *Shelley's case* that when an ancestor takes by any instrument of gift or conveyance a freehold estate, and in the same instrument there is a limitation, either mediately or immediately, to his heirs in fee or in tail, the word " heirs " is a word of limitation and not of purchase, and the first taker takes accordingly an estate of inheritance, was recognized as a part of our common law, and was applied also to trust estates.    *Wight* v. *Baury*, 7 Cush. 105.    *Steel* v. *Cook*, 1 Met. 281.    *Bullard* v. *Goffe*, 20 Pick. 252.    *Davis* v. *Hayden*, 9 Mass. 514.    It was abolished as to devises by St. 1791, c. 60, § 3, and also as to deeds of land by Rev. Sts. c. 59, § 9; and our present statute is to the same effect: " If land is granted or devised to a person and after his death to his heirs in fee, however the grant or devise is expressed, an estate for life only shall vest in such first taker, and a remainder in fee simple in his heirs."   R. L. c. 134, § 4.    *Sims* v. *Pierce*, 157 Mass. 52.    *Trumbull* v. *Trumbull*, 149 Mass. 200.

The rule originally was laid down as applicable only to real estate, with reference to which alone could the word " heirs " properly be used as a word of limitation.   It has, however, in some cases, been extended to dispositions of personal property, with the same result of giving an absolute title to the taker of a mere life estate by reason of a subsequent limitation to his heirs, upon the ground that words which would pass an estate of inheritance in real estate must be construed as giving an absolute title to personal property.    *Taylor* v. *Lindsay*, 14 R. I. 518.    *Evans* v. *Weatherhead*, 24 R. I. 502.    *Carroll* v. *Renich*, 7 Smedes & M. 798.    *Keys' estate*, 4 Pa. Dist. 134.    *Butterfield* v. *Butterfield*, 1 Ves. Sr. 153.    This has been assumed in Mississippi on the ground contended for by the plaintiff, that a statute repealing the rule as to real estate leaves it in force as to personalty.    *Powell* v. *Brandon*, 24 Miss. 343.    *Hampton* v. *Rather*, 30 Miss. 193.    *Carradine* v. *Carradine*, 33 Miss. 698.    On the other hand it has been declared that the rule does not apply at all to personal property.    " There is no authority for holding that because the rule in *Shelley's case* applies to real estate, it is to be applied to per-

sonal estate," said Giffard, V. C. in *Herrick* v. *Franklin*, L. R. 6 Eq. 593, 596. The same doctrine is maintained in *Smith* v, *Butcher*, 10 Ch. D. 113 ; *Gross* v. *Shuler*, 7 Houst. (Del.) 280; *Siceloff* v. *Redman*, 26 Ind. 251; *Bennett* v. *Bennett*, 66 Ill. App. 28, 40. And although the rule itself is one of law and not of construction and was given effect, however at variance with the expressed or manifest intention of the donor, (*Trumbull* v. *Trumbull*, 149 Mass. 200, *Bowers* v. *Porter*, 4 Pick. 198,) yet many of the recent decisions which have extended the rule to limitations of personal property treat it there as merely a rule of construction, which will yield to a clear intent of the settlor or donor. *Taylor* v. *Lindsay*, 14 R. I. 518. *Bucklin* v. *Creighton*, 18 R. I. 325. *Evans* v. *Weatherhead*, 24 R. I. 502. *Bacon's appeal*, 57 Penn. St. 504, 514. *Horne* v. *Lyeth*, 4 Har. & J. 431. *Glover* v. *Condell*, 163 Ill. 566, 587. And see Gray on Perpetuities, § 647, note 3.

We are aware of no decision in this Commonwealth directly in point on this question. But in *Coffin* v. *Jernegan*, 189 Mass. 503, it was assumed that under a bequest of personal property for the support of the testator's daughter for life, with remainder to the beneficiaries under her will or in default of such will to her heirs at law, she took only a life estate. In *Ellis* v. *Proprietors of Essex Merrimack Bridge*, 2 Pick. 243, a testator bequeathed the improvement of shares of stock to his daughter for her life, and at her decease to be equally divided among her heirs ; and it was held that she took merely a life interest, with remainder to her children, because this appeared to the court to be the manifest intent of the testator. In *White* v. *Woodberry*, 9 Pick. 136, there was a bequest of both real and personal estate, and the court treated both alike as governed by St. 1791, c. 60, § 3, and decided that the first taker took only for his life, saying : " It is mere matter of construction founded on the supposed intent of the testator. This construction is settled by *Shelley's case* one way and by our statute another." In *Loring* v. *Eliot*, 16 Gray, 568, under a marriage settlement made in 1817, while the rule in *Shelley's case* was in force as to deeds, the intention of the settlor was regarded as decisive upon the construction of the trusts created by the settlement.

We are of opinion that, in this Commonwealth at any rate, in

the construction to be given to the trusts created by a settlement of personal property, whether executed voluntarily or upon valuable consideration, there is no inflexible rule of law which requires us to apply the rule in *Shelley's case*, but that we should ascertain and carry out the intention of the settlor or donor as expressed in the instrument itself. Applying that rule to the case at bar, it appears that the plaintiff when he executed the instrument which is before us did not intend to limit or reserve to himself the absolute property in the trust fund or the right to resume possession and control of it at his pleasure. He gave to the trustee full and complete power of control, with authority to sell any or all of the securities in such manner and for such price as it might deem expedient, and to make new investments in its own discretion. Instead of reserving to himself any power of revocation, he expressly gave that power to the trustee by authorizing it, in its discretion, when circumstances should seem to warrant such action, to pay to him or his order such portion of the principal as it might see fit. These circumstances are inconsistent with any right on his part to claim the absolute ownership of the fund or the revocation of the trust. Those who shall be at his decease the beneficiaries under his will or his legal heirs will then become entitled to the fund. *Crawford* v. *Langmaid,* 171 Mass. 309, 311, and cases there cited. Here, as in *White* v. *Woodberry,* 9 Pick. 136, 139, there is nothing vested in the plaintiff but the right to the income of the property and to such part of the principal sum as the trustee shall see fit to pay to him.

*Decree of the Probate Court affirmed.*