WILLIAM G. NICKERSON *vs.* FIDUCIARY TRUST CO. & others.

Suffolk.    February 17, 1978. — May 8, 1978.

Present: HALE, C.J., GOODMAN, & ARMSTRONG, JJ.

*Undue Influence. Rule in Shelley's Case. Probate Court,* Counsel fees.

In an action by the settlor of an irrevocable trust seeking to invalidate or reform the instrument of trust, which was made by him over forty years previously, the judge was warranted in finding that the plaintiff had not sustained his burden of proving undue influence in his execution of the trust. [321–322]

The rule in *Shelley's Case* was not applicable to invalidate an irrevocable trust providing for payment of income to the settlor for life with the remainder to his heirs, where it did not appear that, when he executed the trust instrument, the settlor intended "to limit or reserve to himself the absolute property right in the trust fund or the right to resume possession and control of it at his pleasure." [323]

A finding that the settlor of an irrevocable trust who, several years after executing the trust instrument, transferred additional funds to the trustee intended to include those funds in the trust was not clearly erroneous. [323]

No error or abuse of discretion appeared in the award of counsel fees and costs to the defendants in an action by the settlor of an irrevocable trust seeking to reform or invalidate the trust instrument. [324]

CIVIL ACTION commenced in the Probate Court for the county of Suffolk on November 18, 1974.

The case was heard by *Yasi*, J.

*Charles F. Choate* (*Melvin Miller* with him) for William G. Nickerson.

*Francis L. Coolidge* for Fiduciary Trust Co.

*John E. Rogerson*, guardian ad litem, pro se.

*Paul B. Sargent* for Henry G. Nickerson.

HALE, C.J. The plaintiff, William G. Nickerson, seeks to invalidate or alternatively to reform an irrevocable indenture of trust made by him on May 8, 1931, of which the defendant Fiduciary Trust Co. (the trustee) is presently the sole trustee, presumably on the ground that he was induced to execute the instrument through the undue influence of his mother, grandmother, and one of the original trustees. The other defendants are the plaintiff's wife, his brother, the brother's three daughters, and all heirs of the plaintiff unascertained or unknown. The last are represented by a guardian ad litem. A probate judge concluded, among other things, that the burden of proving undue influence had not been sustained by the plaintiff, who now appeals from the judgment dismissing his complaint and awarding counsel fees and costs to the defendants.

We have the evidence before us. We accept the findings of the judge as true unless clearly erroneous; but we may find facts in addition to those found by him. *Zuckerman* v. *Blakeley*, 3 Mass. App. Ct. 685, 687 (1975). *Taylor* v. *Lassell*, 4 Mass. App. Ct. 539, 540 (1976). Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

The plaintiff's case rested almost exclusively on his own testimony. In relevant part Nickerson's testimony was to the following effect: When he turned twenty-one years old, on November 1, 1930, he became entitled to

receive about $100,000, of which one-half was from the proceeds of an insurance policy on his then deceased father's life (held by a Mr. Wolcott), and one-half was a gift from his grandmother (held by a Mr. Goodwin). At that time he was in his third year at Harvard College. As soon as he received these funds, he withdrew from Harvard and, with a letter of credit backed by this money, went to Paris. He returned in April, 1931, having spent approximately $10,000 during his stay in Paris. When Nickerson arrived home he found both his mother and granmother to be very upset with him because he had been spending so much money. They urged him to establish a trust with the money. In early May, 1931, Nickerson and his mother went to visit his grandmother. Soon after they arrived, Mr. Goodwin, the grandmother's lawyer, arrived, and Nickerson was told to leave the room. After a half-hour conference, not attended by Nickerson, he was informed that he was to report on May 8, 1931, to Mr. Goodwin's law office, which he did. When he arrived, he was shown the trust instrument at issue, which Mr. Goodwin said would protect him from creditors and women. Nickerson signed the instrument, and one-half of his property (that held by Mr. Goodwin) was transferred into the trust. The trust instrument provided in substance that Nickerson was to be paid income and principal for life in the sole discretion of the trustees with the remainder on his death to go to those determined to be entitled thereto by applying the laws of intestate succession of Massachusetts in effect at the time of his death. It did not empower Nickerson to amend or revoke the trust or to make any transfer, appointment or testamentary disposition.[1]

---

[1] Article First of the trust reads as follows: "To apply so much of the trust property and net income therefrom as the trustees or trustee hereunder for the time being in their or his unlimited discretion may think best for my maintenance and support, it being expressly understood and agreed that I shall have no right or power to call upon the trustees or trustee for the time being hereunder to pay or convey to me any of the income or principal of the trust property, and such

Sometime between 1931 and 1939 the other half of his funds, which had been held by Mr. Wolcott, was transferred into the trust. The trustees regularly prepared accounts and sent them to the plaintiff who signed them, indicating his assent to their contents.

In 1963 the plaintiff fathered a daughter (Beverly) out of wedlock. He has no other issue. Under the statutes presently in effect, if he were to die, his wife and brother would be the beneficiaries. The status of his illegitimate child as his potential heir is not clear.[2] Although Nicker-

trustees need make no payments or conveyances from said income or principal except such as they in their unlimited discretion may think best. Such sums from income as the trustees hereunder shall not pay over to me or use for my benefit shall be added to principal. On my death the trustees or trustee for the time being hereunder shall convey the balance of the principal and accumulated and accrued income of the trust fund and property to such persons as under the laws of the Commonwealth of Massachusetts in force at the time of my death would be entitled to my property had I then died intestate."

[2] The present Massachusetts law regarding the intestacy rights of illegitimate children is contained in G. L. c. 190, §§ 5–7. Section 5 provides that an illegitimate child shall be the heir of his mother and of any maternal ancestor, and § 7 provides that an illegitimate child may be legitimized (and would thus inherit as any legitimate child) by the intermarriage of his parents *and* either the acknowledgement of his father *or* a court order adjudicating the man to be his father (emphasis supplied). A similar Illinois statute, Ill. Rev. Stat. c. 3, § 12 (1973), was held by the United States Supreme Court to be an unconstitutional discrimination against illegitimate children. *Trimble* v. *Gordon*, 430 U.S. 762 (1977). The Court said that the States are free to require proof of paternity, but "[d]ifficulties of proving paternity in some situations do not justify the total statutory disinheritance of illegitimate children whose fathers die intestate." 430 U.S. at 772.

The plaintiff here moved in the Probate Court to join Beverly Nickerson as a necessary party to this action. The motion was denied. After the instant appeal had been entered in this court, the trustee moved that this court take appropriate action in light of the *Trimble* case. A single justice remanded the case to the Probate Court for a hearing on a motion to join Beverly Nickerson. After hearing, that motion was denied. This appeal was then reset for argument on the February, 1978, list. A motion to join Beverly Nickerson as an additional party defendant was raised again and argued at the oral argument before this court. We fail to see the need for Beverly Nickerson to be joined as a party now after the trial and decision on the merits. Should it

son would like to adopt Beverly, he cannot do so as his present wife is not willing to join in the adoption proceedings as required by G. L. c. 210, § 1. *Davis* v. *McGraw*, 206 Mass. 294, 298 (1910). In August, 1972, Nickerson convinced the trustee to lend money to Beverly's mother to enable her to purchase a house on Martha's Vineyard so that Beverly would have a pleasant place to go to in the summers. The mortgage note which evidenced the loan will not mature until six months after Nickerson's death. No later than a year before the date of trial, Nickerson was advised that his daughter did not "qualify as next of kin" so as to receive anything under the trust upon his death. The judge found that his stated purpose in bringing the present proceeding is to terminate the trust so that he can use the funds directly for Beverly's benefit or to enable him to include her as a trust beneficiary.

Based on the foregoing we cannot say that the conclusion of the judge was clearly erroneous.[3] We have no precedent to allow us to yield to any desire that we might have to soften the harsh effect of the arrangement Nickerson made. It is well settled in this Commonwealth that unless a power of revocation is reserved, a settlor cannot thereafter revoke, alter, or amend a trust instrument in the absence of a showing of lack of mental capacity, or fraud, mistake, or undue influence. *Taylor* v. *Buttrick*, 165 Mass. 547, 549 (1896). *Barnum* v. *Fay*, 320 Mass. 177, 180 (1946). *Leahy* v. *Old Colony Trust Co.*, 326 Mass. 49, 52 (1950). The burden of proving that he would not have

later be established by a decision of the Supreme Judicial Court or by an act of the Legislature that she is entitled to inherit from Nickerson, her interests will have been protected by the guardian ad litem who represents the interests of "minors and persons unborn or unascertained." Beverly at the moment is a minor, and we need not now attempt to ascertain her status. We therefore deny the motion.

[3] The plaintiff contends that several of the judge's findings of fact are not supported by the evidence. While we might agree with those contentions, we fail to see the relevance of the contested findings to the principal question before the court; namely, was this trust voluntarily entered into by the plaintiff?

executed the trust instrument had it not been for the undue influence exerted on him by his mother and grandmother was on the plaintiff. *Taylor* v. *Buttrick, supra* at 549. Undue influence has been described in our case law as "whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammelled desire," *Neill* v. *Brackett*, 234 Mass. 367, 369 (1920), quoted in *Mirik* v. *Phelps*, 297 Mass 250, 252 (1937), and "[a]ny species of coercion, whether physical, mental or moral, which subverts the sound judgment and genuine desire of the individual . . . ." *Neill* v. *Brackett, supra.* The only testimony as to undue influence came from the plaintiff himself, and the judge was not required to believe his version of the circumstances surrounding the execution of the trust. Even if the judge had believed the plaintiff, the events he described do not necessarily constitute undue influence. (See the cases cited in this paragraph, *supra*.) It was open to the judge to find that, at the time the trust was signed, the plaintiff had reached his majority, had completed two years at Harvard College and had experienced the independence of living abroad for six months without parental supervision. His mother and grandmother explained to him the reasons they thought it best that he put his money in trust, and there is no indication that he did not understand their explanation and agree with them. He went voluntarily to the lawyer's office, was allowed to read the instrument, then he signed it. The first article, which appears in its entirety on the first page of the instrument, provides for the disposition of the principal to Nickerson's statutory heirs upon his demise. Even if we accept his testimony that he did not finish reading the instrument, he must certainly have read the first and, until this proceeding, the only relevant provision. The judge found that at the time of trial the plaintiff was a "man of substantial intelligence . . . and . . . acutely aware."

The plaintiff has argued additionally that, if we find that undue influence was not proved, we should find that as to the half of the trust funds held by Wolcott until sometime in the late 1930's the trust should not be continued as there was no evidence that the settlor intended that half to be part of the trust and subject to its terms.

The judge found that the plaintiff "transferred into the trust [the] $50,000, which was inherited from his father's estate."[4] This finding was not clearly erroneous, and we see no basis on which to disturb it. The plaintiff testified that sometime in the 1930's a friend advised him to "consolidate" his funds as "it was silly to have two sums of money [at two banks] . . . and it would be a good idea to handle them together." From that point on he dealt only with the trustee. There is no indication that he did not know what "consolidate" meant. After the funds were added, the plaintiff received regular accountings from the trustee, which he signed and returned. If he had had any objections to the inclusions of those funds in the trust, he should have made them long ago.

Nickerson asks us to apply the rule in *Shelley's Case* (*Wolfe* v. *Shelley*), 1 Coke 219 (1581), and asks us to hold that "a grant to the settlor for life, remainder to his heirs, gives absolute title to the settlor and creates no valid remainder interest in the heirs, unless the settlor has shown a contrary intent." The point has been settled, however, by *Sands* v. *Old Colony Trust Co.*, 195 Mass. 575, 580 (1907), which holds on facts indistinguishable from those in this case, "that we should ascertain and carry out the intention of the settlor . . . as expressed in the instrument itself." Here, as in the *Sands* case, it does not appear that when he executed the trust the settlor intended "to limit or reserve to himself the absolute property in the trust fund or the right to resume possession and control of it at his pleasure." *Ibid.*

---

[4] The second paragraph of the trust provides for later additions to the principal.

The plaintiff complains that counsel fees should not have been awarded to the defendants and that the fees that were awarded were excessive. The judge exercised his discretion and awarded counsel fees "based upon the complexity of the issues, the necessary time required, the necessity of trial, the financial sums involved (the judge found that the market value of the trust assets was approximately $400,000), [and] the experience of the practitioners." He determined also that "[c]ounsel fees shall not be awarded where the trust has received no benefit from the services rendered." There was no error or abuse of discretion in awarding counsel fees and costs to the defendants. Under G. L. c. 215, § 45, and G. L. c. 215, § 39B, as appearing in St. 1975, c. 400, § 70, the Probate Court had the power to award costs, expenses, and fees for services to counsel. *Miller* v. *Miller*, 339 Mass. 262, 265 (1959). *First National Bank* v. *Sullivan*, 4 Mass. App. Ct. 414, 417 (1976). The judge used the correct criteria and was able to observe at first hand the efforts of counsel. Such awards generally rest in sound judicial discretion, may be presumed to be right, and ordinarily ought not to be disturbed. *Smith* v. *Smith*, 361 Mass. 733, 738 (1972). We cannot say that the sums allowed were excessive.

*Judgment affirmed.*