CHARLES P. BOWDITCH, trustee, & others *vs.* EBEN D. JORDAN & another.

Suffolk. March 16. — June 30, 1881. COLT, LORD & DEVENS, JJ., absent.

In a marriage settlement made in 1830 between A., B. his intended wife, and C. as trustee, A. covenanted that he would stand seised of one undivided third part of all the lands of which he was then seised and possessed, "to the sole use and behoof of A. during his natural life; and after his marriage with B. and after his decease, to the sole use and behoof of B. during her natural life, for her jointure, and in lieu and satisfaction of her whole dower in all the land and real estate of which A. is now seised or may at any time be seised during his coverture with B., and also in lieu and satisfaction of B.'s whole claim to the thirds of the personal estate of A.; and after the decease of B., to the use of D. and E. (B.'s daughters by a former marriage) during their natural lives and the life of the survivor of them; and after the decease of D. and E., to the use of the heirs and assigns of A. forever." *Held*, that the concluding words of the covenant, "to the use of the heirs and assigns of A. forever," were intended as words of limitation, and not of purchase.

The fact that neither a vessel, in which a person went to sea forty years ago, nor the person, has been heard from since, will warrant the inference that such person is dead.

BILL IN EQUITY, filed December 20, 1880, by the trustee under the will of Benjamin Dearborn, deceased; the Boston Dispensary, a corporation duly established under the laws of this Commonwealth; and Hannah Nye Dearborn, widow; against Eben D. Jordan and Charles Marsh, copartners under the firm name of Jordan, Marsh & Company, to compel the specific performance of an agreement to purchase a certain parcel of land, with the dwelling-house thereon, situated on Avon Street in Boston. Hearing before *Morton*, J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*R. Stone, Jr.*, for the trustee and Mrs. Dearborn.

*F. E. Parker*, (*A. Lincoln* with him,) for the Boston Dispensary.

*J. D. Ball*, for the defendants.

MORTON, J. In the marriage settlement between Benjamin Dearborn, his intended wife Hannah, and Benjamin Bangs as trustee, dated February 18, 1830, the said Dearborn covenants that he will stand seised of one undivided third part of all the lands of which he was then seised and possessed, "to the uses and intents hereinafter by these presents expressed, limited and declared, and to none other; namely, to the sole use and behoof of said Dearborn during his natural life; and after his marriage with said Hannah and after his decease, to the sole use and behoof of said Hannah during her natural life, for her jointure, and in lieu and satisfaction of her whole dower in all the land and real estate of which said Dearborn is now seised or may at any time be seised during his coverture with said Hannah, and also in lieu and satisfaction of said Hannah's whole claim to the thirds of the personal estate of said Dearborn; and after the decease of said Hannah, to the use of said Hannah Nye Freeman and Helen M. Freeman during their natural lives and the life of the survivor of them; and after the decease of said Hannah Nye Freeman and Helen M. Freeman, to the use of the heirs and assigns of said Dearborn forever." No conveyance was made to Bangs, the trustee. The effect of the covenants of Dearborn was that he held the estates upon the trusts declared in the settlement; and the determination of this case depends upon the question whether the concluding words of this covenant, "to the use of the heirs and assigns of said Dearborn forever," were intended as words of limitation or of purchase.

In construing trust estates created by marriage settlements, regard is to be had to the intention to be deduced from the whole instrument of conveyance to a greater extent than in the construction of the like limitations in legal estates. *Loring* v. *Eliot*, 16 Gray, 568. The whole scope of this settlement shows that the purpose of the settlor was to secure out of the fee held by him a provision for his intended wife and her two daughters by a former marriage during their lives, and that the residue of his estate should remain vested in him. The recitals in the first part of the indenture point to this as the only purpose of the settlement. They set out in substance that, in consideration of the intended marriage, the settlor has agreed that his wife shall have, if she survives him, in lieu of dower and for her jointure

and support, a life estate in one undivided third part of all the real estate of which he is seised and possessed, and that her daughters and the survivor of them shall have a like estate during their lives. They do not contemplate or refer to any disposition of the estate after the termination of the life estates. The indenture does not in any way affect the settlor's interest in two undivided third parts of his estate, and there is some improbability in the supposition that he intended to divest himself of the reversion in one undivided third part, thus separating it from the other two thirds and dividing the fee. The language of the clause we are considering, " to the use of the heirs and assigns of said Dearborn forever," is significant in the same direction. It is not to be supposed that, in an instrument so carefully drawn, the words " and assigns " were used inadvertently or without meaning. They strongly indicate the understanding of the settlor that he retained an estate which he could assign.

We are therefore of opinion, that these words were intended and are to be construed as words of limitation, and not as words of purchase, and that the one undivided third part remained in the settlor as of his old estate, unaffected by any trust. The rule in *Shelley's case,* 1 Rep. 88, 104, therefore, has no application to this case; for the same reason, and for the additional reason that this indenture was made prior to the year 1836, the modification of that rule adopted by our statutes is inapplicable. Gen. Sts. c. 89, § 12. *Loring* v. *Eliot, ubi supra.*

It appears in this case that Mrs. Hannah Dearborn and Helen M. Freeman are dead, the facts that the latter sailed for Pernambuco in the year 1840, and that neither the vessel in which she sailed nor any person on board has ever since been heard of, justifying and requiring the inference of her death; that the other life tenant, Hannah Nye Freeman, and all the parties who are entitled to the estate, as devisees under the will of said Dearborn, have executed the deed tendered to the defendants. It follows that, as this deed will convey to the defendants a good title, the plaintiffs are entitled to a decree for a specific performance. *Decree for the plaintiffs.*