THE NATIONAL SHAWMUT BANK OF BOSTON & another, trustees, *vs.* MINNIE B. JOY & others.

Suffolk.    December 8, 1943. — February 2, 1944.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Power. Trust,* Express: construction, validity. *Wills, Statute of. Words,* "Persons . . . entitled to take . . . under the laws of intestacy."

The validity and binding effect of a formal written declaration of trust was not affected even if the settlor did not understand the effect of the instrument upon his property and upon a will made by him ten years earlier.

Knowledge by a beneficiary of the existence of a trust established under a formal written declaration of trust in his favor is not essential to its validity.

The will of the settlor in a declaration of trust did not constitute a valid exercise of a power of appointment reserved to him by provisions of the trust requiring that the power be exercised only by an instrument under his seal, duly acknowledged by him and deposited with the trustee, where, although one witness to the will was a notary public, it did not appear that there was an acknowledgment before him, and, although the executor named in the will was also the trustee named in the trust instrument, it did not appear that in receiving custody of the will he had received it as trustee.

Under a declaration of trust providing benefits for the donor and another for life and that upon their deaths the principal and accumulated income should be paid as the donor should appoint or, in default of appointment, "to such person or persons as are entitled to take from the donor under the laws of intestacy of the" Commonwealth, the provision as to the statutory next of kin did not show that they were to take only by descent in the event of actual intestacy of the settlor,

but referred to them as purchasers and applied, upon default of appointment, although the donor died testate; the provision created an equitable future interest in the statutory next of kin contingent upon a default in appointment and, if there were no appointment, upon a determination at his death of the persons who should be such statutory next of kin.

The mere facts, that a trust of personal property, established inter vivos under a formal declaration of trust, which upon stated contingencies disposed of the trust property after the death of the settlor, was not executed with the formalities required by the statute of wills, was established to avoid making a will, or to evade or circumvent those statutory requirements, or to make disposition of property which would make a will unnecessary and would be a substitute for a will, did not affect the validity of the trust.

The validity of interests to be determined at or after the death of the settlor under a declaration of trust of personal property was not affected by the facts that the settlor reserved to himself not only a life interest but also a general power to appoint the disposition of the trust property after his life interest and a life interest of another; that he also reserved to himself power to alter, amend, or revoke the trust; and that he directed that investments by the trustee should be made solely in accordance with written instructions of a certain dealer and broker in securities, who was to be entitled to receive any commissions and profits which might be realized by him in the investment transactions of the trustee.

The decision and the reasoning of the opinion in *McEvoy* v. *Boston Five Cents Savings Bank*, 201 Mass. 50, overruled.

Upon the death, without making an appointment, of the donor of a declaration of trust which was for the benefit of the donor and another for life, and which directed that, after their deaths, in default of an appointment, principal and accumulated interest should be paid "to such person or persons as are entitled to take from the donor under the laws of intestacy of the" Commonwealth, the trustee was instructed that such payment should be made to those who were next of kin of the donor at his death, and not to the legatees in his will.

PETITION, filed in the Probate Court for the county of Suffolk on October 31, 1942, for instructions.

The case was heard by *Dillon*, J.

*J. C. Coughlin*, stated the case.

*C. C. Milton*, (*A. H. Sheedy* with him,) for John Anthony Bettencourt and another.

*J. S. Allen*, for Minnie B. Joy and others.

*H. Snyder*, for Stephen H. Wildman.

*D. F. McCormack*, for Albert E. Wildman and another.

*M. A. Shattuck*, for The National Shawmut Bank of Boston and another, trustees.

LUMMUS, J.    This petition, filed October 31, 1942, is brought by The National Shawmut Bank of Boston and Haven Parker as trustees under an indenture of trust under seal entered into by them as trustees with William W. Nicholls of Boston as settlor, dated March 12, 1936, for instructions as to the distribution of the trust property at the termination of the trust.

The evidence is reported, but the material facts are not in dispute. William W. Nicholls, who was born in England on October 24, 1860, migrated to Massachusetts with his mother and sister in 1872. He grew up in Boston, where he became a naturalized citizen on May 12, 1886. He never married. Apparently before 1890 he went to the Azores to live, and there became agent for a steamship line and for a time was American consul. He lived there at Brown's Hotel, kept by Miss Sophia Brown, at Ponta Delgada on the island of São Miguel. But he retained his domicil in Boston, and always described himself as of Boston. *Rummel* v. *Peters*, 314 Mass. 504. *Cassen* v. *Cassen, ante*, 35.

After he went to the Azores, his mother and sister continued to live in Boston in a house maintained by him until they died about thirty years ago. Even after their deaths he continued to visit Boston every year or two, although he no longer maintained a house there.

He had friends of long standing in New England, some of whom he made legatees in his will. At some time he told one of them that his friends meant much more to him than his relatives in England. One of his friends was Louis G. Neville, a dealer and broker in securities in Boston, who from about 1920 was given a free hand in buying and selling securities for Nicholls.

On October 21, 1926, while on a visit to Boston, Nicholls made his will, which was under seal. He named the petitioning bank as executor, and devised and bequeathed to it as trustee all his property. The income was made payable to Sophia Brown during her life, and after her death to another person (who in fact died before Sophia Brown) for his life. At the death of the survivor of them, pecuniary legacies were made payable to the respondent Minnie B.

Joy and several other persons, and the residue was given to the respondents Bettencourt and DeCosta. The will when executed was put into the custody of the petitioning bank, and remained in its custody until after Nicholls died on October 7, 1937. The will was proved and allowed, and the bank was appointed executor, by the Probate Court in and for the county of Suffolk at Boston on June 5, 1939.

In 1936, while Nicholls was in the Azores, Neville, his son-in-law Haven Parker, an attorney at law, and the bank decided that it would be advisable for Nicholls to establish a voluntary trust. It does not appear that Nicholls had been consulted. An instrument of trust was drawn and sent to Nicholls, and he executed it in the Azores on March 12, 1936. It was in form an indenture, and when executed bore the signatures and seals of Nicholls as settlor and the bank and Mr. Parker as trustees. It was amended, under a power reserved by Nicholls, by another instrument similarly executed, dated May 29, 1936. The combined instruments will be described as though one. The property thereby conveyed by Nicholls to the trustees consisted entirely of corporate stocks and bonds. It was provided that the trust was established under the laws of Massachusetts, and was to be governed by those laws. *Codman* v. *Krell*, 152 Mass. 214, 218. *Proctor* v. *Clark*, 154 Mass. 45, 48. *Harvey* v. *Fiduciary Trust Co.* 299 Mass. 457, 464. Loring, Trustee's Handbook (5th ed. 1940) §§ 118–120. *Commonwealth* v. *Stewart*, 338 Penn. St. 9, affirmed *Stewart* v. *Commonwealth*, 312 U. S. 649. There is nothing to show that Nicholls did not understand the effect of the trust instrument upon his property and upon his earlier will. But whether he did or not, the terms of the trust instrument, as far as they are valid, bound him and bind all who claim under him.

By those terms, Nicholls was to be paid $230 a month out of the income or, if necessary, out of the principal.[1] It was

---

[1] This provision was substituted by the amendment of May 29, 1936, for one which made payable to Nicholls during his life only the income and so much of the principal as the trustees in their absolute discretion might deem necessary. The only other change made by that amendment was the insertion of the words "or sale" after the word "purchase" in a provision, hereinafter quoted, giving certain powers to Neville.

provided that "the trustees may make other payments from the principal of the trust fund as they in their absolute discretion may deem necessary for the benefit of William W. Nicholls." After his death, the income, and so much of the principal as the trustees in their absolute discretion might deem necessary, were to be paid to Sophia Brown during her life. After the deaths of both Nicholls and Sophia Brown, the principal and any accumulated income were to be paid over free from trust "to such person, persons or corporation as the donor [Nicholls] may appoint by an instrument duly acknowledged by him and under his seal and deposited with the trustees," and in default of such appointment "to such person or persons as are entitled to take from the donor [Nicholls] under the laws of intestacy of the Commonwealth of Massachusetts." It does not appear that Sophia Brown knew during the life of Nicholls of the existence of the trust, but such knowledge was not necessary to its validity. *Aronian* v. *Asadoorian, ante,* 274.

After Nicholls died on October 7, 1937, the trustees made payments under the trust instrument to Sophia Brown until her death on July 24, 1942. They now hold personalty, comprising the principal of the trust property, amounting to more than $29,000, besides nearly $1,000 of income remaining unpaid at the death of Sophia Brown. The Probate Court instructed the trustees to pay over the accumulated income as though it were principal, and the administrator of the estate of Sophia Brown did not appeal. The Probate Court instructed the trustees to distribute the principal and accumulated income equally among the three first cousins of Nicholls in England (including the administrator of the estate of one of them who died on April 11, 1939) living at the death of Nicholls on October 7, 1937. They were his statutory next of kin under the Massachusetts statute of distributions, G. L. (Ter. Ed.) c. 190, §§ 2, 3 (6). Am. Law Inst. Restatement: Property, §§ 310, 311. Some of the legatees named in his will appealed. Apart from the trust property, Nicholls left less than $1,000, and what he left has been consumed in paying debts and expenses of his estate.

1. The will was not a valid exercise of the power of appointment reserved by Nicholls in the trust instrument. Whether the fact that the will antedated the trust is material need not be decided. Am. Law Inst. Restatement: Property, § 344. Nicholls could appoint only by an instrument (a) under his seal (b) duly acknowledged by him and (c) deposited with the trustees. Am. Law Inst. Restatement: Property, §§ 346, 347, 365. Scott, Trusts (1939) § 330.8. One of the attesting witnesses happened to be a notary public qualified to take acknowledgments. G. L. (1921) c. 183, § 30. G. L. c. 4, § 6, Sixth, as amended by St. 1926, c. 187, § 2. But it is not shown that Nicholls knew that fact, or "acknowledged" the will before the notary public as such. There is nothing to show that the notary public undertook to act in his official capacity, or took any acknowledgment in the sense in which that word is used in Massachusetts conveyancing. On the face of the will he did nothing as notary public, but merely subscribed as an attesting witness like the other witnesses. And the will, though deposited with the bank that nearly ten years later became a trustee, was never held by the bank in its capacity as trustee, so far as appears, and was never deposited with or held by the individual trustee at all. There was therefore no valid exercise of the power to appoint. We need not consider whether, if the will were a valid exercise of the power, the pecuniary legacies could be deemed appointments. *Slayton* v. *Fitch Home, Inc.* 293 Mass. 574. *Old Colony Trust Co.* v. *Allen,* 307 Mass. 40, 45. Am. Law Inst. Restatement: Property, § 343.

2. The legatees under the will contend that the gift over, in default of appointment, to the "person or persons . . . entitled to take" from Nicholls "under the laws of intestacy" — in other words, to his statutory next of kin[1] — was to

---

[1] When the expression "next of kin" has been actually used, it has sometimes been held to mean, not the statutory next of kin or distributees, but the nearest relative or relatives by blood. *Swasey* v. *Jaques,* 144 Mass. 135. *Fargo* v. *Miller,* 150 Mass. 225, 231 (will; compare Am. Law Inst. Restatement: Property, § 307; *New York Life Ins. & Trust Co.* v. *Winthrop,* 237 N. Y. 93). *Kelley's Case,* 222 Mass. 538, 541; *Cowden's Case,* 225 Mass. 66 (workmen's compensation). *Makller* v. *Independent Workmen's Circle of America, Inc.* 255 Mass. 252, 254, 255 (fraternal benefit). See also *O'Connell*

have effect only in the event that Nicholls should actually die intestate so that his statutory next of kin would take by descent, and would not need to claim as purchasers by virtue of any gift to them in the trust instrument. The provision in question uses the indicative instead of the subjunctive. The legatees contend that that provision does not refer to the persons who would be the statutory next of kin if Nicholls should die intestate, but refers to persons who because of intestacy in fact become entitled "under" and by the actual operation of the "laws of intestacy." Since Nicholls did not die intestate, they contend that the contingency thus provided for did not happen, and that the result is the same as though the trust instrument had created the life estates and then had stopped, leaving the disposition of the property after the life estates unprovided for. Upon that construction there would be a resulting trust for the settlor, Nicholls, and the property would pass under his will.

By the so called rule of "worthier title," where a grantor or testator creates a life estate, with what is apparently a remainder to his own heirs at law, so that the instrument appears to give them precisely the same interest that they would get upon the death of the grantor or testator if no such remainder had been given, the heirs will be deemed to take by descent, and not (as the phrase is) as purchasers. An apparent remainder to the heirs of a grantor is thus deemed a reservation of a reversion to the grantor himself. The reason for this rule is said to be that "the title by descent is the worthier and better title." *Ellis* v. *Page,* 7 Cush. 161, 163. *Whitney* v. *Whitney,* 14 Mass. 88, 90. *Sears* v. *Russell,* 8 Gray, 86, 93–97. *Sedgwick* v. *Minot,* 6 Allen, 171. *Waters* v. *Stickney,* 12 Allen, 1, 17. *Pierce* v. *Smith,* 13 Allen, 42 (to named "children," in fact heirs). *Eldred* v. *Davis,* 181 Mass. 498, 500. Simes, Future Interests (1936) §§ 144–148. Note, 125 Am. L. R. 548, 46 Harv. Law Rev. 993. Simes

v. *Powers,* 291 Mass. 153, 156; *Waverly Trust Co., petitioner,* 268 Mass. 181, 183. A wife, though a distributee and a statutory "heir" (*Thompson* v. *Bray,* 313 Mass. 717, 721), has been held not to be one of the "next of kin" of her husband. *Haraden* v. *Larrabee,* 113 Mass. 430. *Matter of Waring,* 275 N. Y. 6.

says (§ 147, *supra*) that the feudal reasons for this rule have long since disappeared, and that no others have taken their place. The rule has been held to apply to transfers or bequests of personalty, with an ultimate gift to the grantor's or testator's statutory next of kin. *Parsons* v. *Winslow*, 6 Mass. 169, 178, 179. *Thompson* v. *Thornton*, 197 Mass. 273, 276. *Engel* v. *Guaranty Trust Co.* 280 N. Y. 43, 47. *In re Estate of Warren*, 211 Iowa, 940, 948. *Donohue* v. *McNichol*, 61 Penn. St. 73, 78. Note, 125 Am. L. R. 560–565. Scott, Trusts (1939) § 127.1. Page, Wills (3d ed. 1941) § 214.

But like the cognate rule in *Shelley's Case*, 1 Co. Rep. 93, 104 (often confused with it, *Doctor* v. *Hughes*, 225 N. Y. 305; Note, 125 Am. L. R. 565–568; Am. Law Inst. Restatement: Property, § 312), which applied to equitable as well as legal estates and still applies to personalty (*Sands* v. *Old Colony Trust Co.* 195 Mass. 575), the rule of "worthier title" as applied to equitable interests and interests in personalty, at least, is now no more than a precept of construction which may be outweighed by indications of a contrary intent. *Doctor* v. *Hughes*, 225 N. Y. 305. *Whittemore* v. *Equitable Trust Co.* 250 N. Y. 298. *Schoellkopf* v. *Marine Trust Co.* 267 N. Y. 358, 363. *City Bank Farmers Trust Co.* v. *Miller*, 278 N. Y. 134. *Engel* v. *Guaranty Trust Co.* 280 N. Y. 43, 47. Scott, Trusts (1939) § 127.1. Simes, Future Interests (1936) § 147. Am. Law Inst. Restatement: Property, § 314. In substance, this has been decided in this Commonwealth in cases where the facts brought them within this rule, although the court discussed the rule in *Shelley's Case*. *Loring* v. *Eliot*, 16 Gray, 568, 573. *Bowditch* v. *Jordan*, 131 Mass. 321. *Sands* v. *Old Colony Trust Co.* 195 Mass. 575.

In a number of cases gifts over to the heirs of a settlor have been held to give them title by purchase and not by descent. In *Sands* v. *Old Colony Trust Co.* 195 Mass. 575, an unmarried man conveyed securities to a corporate trustee, to pay the income and so much of the principal as the trustee might see fit to the settlor during his life, and at his death to pay the principal and any accumulated income to his "legal heirs," subject to his reserved right to appoint otherwise by will. It was held that the settlor was not the

sole beneficiary, that upon his death his appointees or his legal heirs would take as purchasers, and that he had no right to revoke the trust and claim a reconveyance. Similar decisions in principle were made in *Johnson* v. *Whiton,* 118 Mass. 340, *Thurston, petitioner,* 154 Mass. 596, *Wason* v. *Ranney,* 167 Mass. 159, and *Crawford* v. *Langmaid,* 171 Mass. 309. If all the beneficiaries had been ascertainable and had consented, the trust could have been terminated. *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston,* 308 Mass. 1, 11. *Hills* v. *Travelers Bank & Trust Co.* 125 Conn. 640, 123 Am. L. R. 1419, and note. *Allen* v. *Safe Deposit & Trust Co.* 177 Md. 26. Am. Law Inst. Restatement: Trusts, § 337. Scott, Trusts (1939) § 340.

In several cases in New York, after a life estate, a limitation over, in default of appointment, to the heirs or statutory next of kin of the settlor has been held to be a gift to them as purchasers, with the result that since they could not be ascertained during the life of the settlor the trust could not be revoked by him under a statute allowing revocation "upon the written consent of all the persons beneficially interested." *Whittemore* v. *Equitable Trust Co.* 250 N. Y. 298. *Schoellkopf* v. *Marine Trust Co.* 267 N. Y. 358. *Engel* v. *Guaranty Trust Co.* 280 N. Y. 43. The authority of those cases seems not to have been impaired by the later holding that the unborn are not "persons" within the statute. *Smith* v. *Title Guarantee & Trust Co.* 287 N. Y. 500.

If the trust instrument before us had stopped with the creation of the two life estates, there would have been a resulting trust of the reversion in favor of the settlor, Nicholls. Am. Law Inst. Restatement: Trusts, §§ 404, 407, 430. Scott, Trusts (1939) §§ 404, 411–411.2, 422A. In that case, if Nicholls should leave a will, the trust property would pass under his will; if he should not, it would pass to his statutory next of kin by force of the statute of distributions. Upon the construction contended for by the legatees, Nicholls made provision for one of those alternative contingencies by simply declaring what the legal result would have been without any provision. The other he ignored. Both contingencies could equally well have been

left to the law if the legal consequences of a resulting trust had been what was desired.  It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible.[1]  The construction contended for by the legatees would reduce the provision actually made to a useless declaration of the law.  Upon that construction, the settlor expressly but uselessly declared the result of his dying intestate, but failed to make a similar declaration of the result of his leaving a will.  The likelihood that the settlor intended to make effective provision for all contingencies and did not intend by mere omission to leave any interest undisposed of, is entitled to some weight.  Am. Law Inst. Restatement: Property, § 243 (a), comment c.

The construction adopted by the Probate Court results in a simple, logical and complete scheme of disposition of the trust property after the life estates.  The settlor reserved, not only the power to alter, amend or revoke the trust, but also a general power of appointment of the trust property, after the life estates, to any person, persons or corporation. The trust instrument purported to empower him further to revoke any such appointment and to exercise the power anew.  See *State Street Trust Co.* v. *Crocker,* 306 Mass. 257, 262, et seq.  Only in the event of failure to appoint was the trust property to go to the statutory next of kin.  Under the terms of the trust instrument there was no need of any express or implied right to provide by will for the future of the trust property in order to give the settlor the fullest control of it.  If disposition by will had been contemplated, it would have been natural to make some mention of it, either in the power of appointment or elsewhere.  We think that neither the use of the indicative instead of the subjunctive nor anything else in the case shows that the gift over to the statutory next of kin was to apply only in the

---

[1] *Parsons* v. *Winslow,* 6 Mass. 169, 175.  *Dow* v. *Abbott,* 197 Mass. 283, 287· *McLaughlin* v. *Greene,* 198 Mass. 153, 155.  *Hall* v. *Hall,* 209 Mass. 350, 353· *Prescott* v. *St. Luke's Hospital of New Bedford,* 280 Mass. 229, 231.  *Smith* v· *Livermore,* 298 Mass. 223, 232.  *Frost* v. *Hunter,* 312 Mass. 16, 20.  *Stevens* v· *Bradford,* 185 Mass. 439, 441.  *Barnes* v. *Peck,* 283 Mass. 618, 625.  *Commonwealth* v. *McMenimon,* 295 Mass. 467, 469.  *Fluet* v. *McCabe,* 299 Mass. 173, 178.  *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 360.

event of actual intestacy. The statutory next of kin were to take as purchasers under the provisions of the trust instrument.

If the provisions of the trust instrument are valid and controlling, the legatees have no concern with the question whether the "person or persons" constituting the statutory next of kin of Nicholls are to be determined as of the date of the trust instrument (in which case their interests would be vested), or as of the date of his death, or as of the date of the death of the surviving life tenant. That question has not been argued. Ordinarily the heirs and statutory next of kin of a person are determined as of the time of his death. *Fargo* v. *Miller,* 150 Mass. 225, 229. *Merrill* v. *Preston,* 187 Mass. 197. *Ford* v. *Ford,* 220 Mass. 322, 324. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528. *Old Colony Trust Co.* v. *Johnson,* 314 Mass. 703, 711. Am. Law Inst. Restatement: ₐProperty, § 308. Since the statutory next of kin of Nicholls, in the natural and accurate sense of the words, could not be determined until his death, the gift over to them remained wholly contingent until he died. *Walcott* v. *Robinson,* 214 Mass. 172. *Bailey* v. *Smith,* 222 Mass. 600, 602, 603. *Conant* v. *St. John,* 233 Mass. 547, 551, 552. *Sherburne* v. *Howland,* 239 Mass. 439, 441, 442. *Robertson* v. *Robertson,* 313 Mass. 520, 528. *Binney* v. *Commissioner of Corporations & Taxation,* 293 Mass. 96, 101, 102. Tiffany, Real Property (3d ed. 1939) § 321. Until Nicholls died, his cousins had not even what has been called a "vested," or more properly a transmissible, interest in a contingent remainder (*Putnam* v. *Story,* 132 Mass. 205, 210, 211; *Hall* v. *Farmer,* 229 Mass. 103), which interest arises where, except for the possible loss of the property through the exercise of an underlying power of appointment, the remainderman cannot fail to take if he lives until the time of vesting. *Putnam* v. *Story,* 132 Mass. 205, 210. *Whipple* v. *Fairchild,* 139 Mass. 262. *Clarke* v. *Fay,* 205 Mass. 228. *Nickerson* v. *Harding,* 267 Mass. 203, 207. *Commissioner of Corporations & Taxation* v. *Alford,* 282 Mass. 113, 118, 119. *Whiteside* v. *Merchants National Bank,* 284 Mass. 165, 174, 175. G. L. (Ter. Ed.) c. 184, § 2.

Although the interest given to the statutory next of kin would vest at or before the expiration of the preceding life estates, and thus conformed to the common law rule for a remainder (*Simonds* v. *Simonds*, 199 Mass. 552, 555; Tiffany, Real Property [3d ed. 1939] §§ 327, 330; 2 Am. Law Inst. Restatement: Property, at pages 509–513; compare G. L. [Ter. Ed.] c. 184, § 3; Thorndike, 30 Harv. Law Rev. 226), that fact is immaterial. Since the property was personalty (2 Fearne, Contingent Remainders [10th ed. 1844] 58, 60; Gray, Rule against Perpetuities [4th ed. 1942] § 326) and the interest equitable (Tiffany, Real Property [3d ed. 1939] § 335; Gray, Rule against Perpetuities [4th ed. 1942] §§ 116, 284, 324), in a precise use of language the interest of the statutory next of kin was not a "remainder" but was properly described as a future interest "in the nature of an equitable remainder." *Swett* v. *Thompson*, 149 Mass. 302, 303. Am. Law Inst. Restatement: Property, § 25 (2). But in current speech it was an equitable contingent remainder. *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston*, 308 Mass. 1, 4, 5. Am. Law Inst. Restatement: Property, § 156, comment e. Even if the property had been realty, there would have been no need of tracing a fee into the settlor or his heirs while the contingency remained undetermined, as in legal estates at common law (2 Fearne, Contingent Remainders [10th ed. 1844] 20, 21; *Duffield* v. *Duffield*, 1 Dow & Cl. 268, 310, 311; *Wason* v. *Ranney*, 167 Mass. 159; *Bass River Savings Bank* v. *Nickerson*, 303 Mass. 332, 335; Tiffany, Real Property [3d ed. 1939] § 332), for the fact that the fee would be in the trustees (*Richardson* v. *Warfield*, 252 Mass. 518; *Haskell* v. *Haskell*, 234 Mass. 442) would have satisfied all the feudal requirements of the common law. *Abbiss* v. *Burney*, 17 Ch. D. 211, 229, 230. *Cowman* v. *Classen*, 156 Md. 428, 439. Tiffany, Real Property (3d ed. 1939) §§ 327, 330, 332, 335.

Here the property was personalty, and the entire legal title vested in the trustees. Scott, Trusts (1939) § 88.1. *Welch* v. *Boston*, 221 Mass. 155, 157. Compare *Hayward* v.

*Rowe,* 190 Mass. 1, 3.  Equity has always recognized future
and even executory (Am. Law Inst. Restatement: Property,
§ 25 [2]) beneficial interests in realty or personalty without
regard to common law technicalities, and even in favor of
unascertained or unborn persons, subject however to the
rule against perpetuities.  *Abbiss* v. *Burney,* 17 Ch. D. 211,
229, 230.  *Cowman* v. *Classen,* 156 Md. 428, 439.  *Bromley*
v. *Mitchell,* 155 Mass. 509, 511.  *Binney* v. *Commissioner
of Corporations & Taxation,* 293 Mass. 96, 101.  *Legro* v.
*Kelley,* 311 Mass. 674, 676, 677.  Scott, Trusts (1939) §§ 56.4,
56.5, 112–112.2, 129–131.  Tiffany, Real Property (3d ed.
1939) §§ 327, 335, 359, 361.  Gray, Rule against Perpetui-
ties (4th ed. 1942) §§ 116, 284, 324, 326.  This is illustrated
by cases where the equitable future interest that was created
was a use which, after its creation, became executed by the
statute of uses and converted into a legal estate.  *Second
Congregational Society in North Bridgewater* v. *Waring,* 24
Pick. 304.  *Old South Society in Boston* v. *Crocker,* 119 Mass.
1, 23.  *West* v. *West,* 155 Mass. 317.  *Ricker* v. *Brown,* 183
Mass. 424, 428.  *Simonds* v. *Simonds,* 199 Mass. 552, 556,
557.  *Bass River Savings Bank* v. *Nickerson,* 303 Mass. 332,
335.  Notes, 11 Am. L. R. 23, 76 Am. L. R. 636.  2 Am. Law
Inst. Restatement: Property, at pages 510–513.  A trust
is valid although the beneficiaries are left to be determined
by the will of the settlor (*Loring* v. *Massachusetts Horticul-
tural Society,* 171 Mass. 401; Scott, Trusts [1939] § 56.4),
but in that case a trust results for the settlor until the will
takes effect.  *Re Bartlett Trust,* 47 Manitoba, 113.  The
selection of beneficiaries out of a class may be left to the
trustee.  *Shepard* v. *Newton,* 304 Mass. 6.

In our opinion the judge was right, assuming that the
provisions of the trust instrument are valid, in ordering
distribution among the three first cousins (including the ad-
ministrator of the estate of one of them who died on April
11, 1939) living at the death of Nicholls on October 7, 1937.

3. The remaining contention of the legatees presents
another important question.  They contend that Nicholls
reserved full dominion over the trust property; that the
provisions for persons other than Nicholls himself were

testamentary in nature, intended to take effect only at or after his death, and were invalid because the trust instrument was not attested and subscribed by three witnesses as required for a will by G. L. (Ter. Ed.) c. 191, § 1; and that the trust instrument created merely an agency for Nicholls and not a genuine trust for other persons as cestuis after his death.

If that contention should prevail, the trust property would be deemed either the unqualified property of Nicholls, or property held for him under a resulting trust, and would pass under his will, either at his death or at the latest at the death of Sophia Brown, to the executor of his will for the benefit of the legatees named therein.

From the statute allowing the testamentary disposition of property by a will signed and witnessed as required by law (G. L. [Ter. Ed.] c. 191, § 1) and duly proved and allowed after death (§ 7; *Loring* v. *Massachusetts Horticultural Society*, 171 Mass. 401, 402–403) the inference is plain that a testamentary disposition of property in any other manner is void.[1] *Thayer* v. *Wellington*, 9 Allen, 283. *Olliffe* v. *Wells*, 130 Mass. 221. *Frost* v. *Frost*, 202 Mass. 100. *Russell* v. *Webster*, 213 Mass. 491, 492. *Landry* v. *Landry*, 265 Mass. 265, 267. *Riley* v. *McMaster*, 313 Mass. 739, 740. The statutes formerly contained an express provision to this effect (Gen. Sts. [1860] c. 92, § 6), and when it was omitted from Pub. Sts. (1882) c. 127, § 1, there was no intent to change the law. *Drew* v. *Streeter*, 137 Mass. 460. *Bent* v. *Hubbardston*, 138 Mass. 99. *Pratt* v. *Street Commissioners of Boston*, 139 Mass. 559, 563. *Wright* v. *Dressel*, 140 Mass. 147, 149.

The distinguishing feature of a testamentary disposition is that it remains ambulatory until the death of the one who makes it. Until he dies, his title remains unimpaired

---

[1] A gift causa mortis is no exception, for it must be perfected and title must pass inter vivos. It differs from an absolute gift mainly in being defeasible upon an express or implied condition subsequent. *Duryea* v. *Harvey*, 183 Mass. 429. *Peck* v. *Scofield*, 186 Mass. 108. *Day* v. *Richards*, 197 Mass. 86. *Cronin* v. *Chelsea Savings Bank*, 201 Mass. 146. *Nelson* v. *Peterson*, 202 Mass. 369. *Stratton* v. *Athol Savings Bank*, 213 Mass. 46. *Stevens* v. *Provident Institution for Savings*, 226 Mass. 138. *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576. *Greeley* v. *O'Connor*, 294 Mass. 527, 533. *Rock* v. *Rock*, 309 Mass. 44.

and unaffected. A testamentary disposition becomes operative only upon and by reason of the death of the owner who makes it. It operates only upon what he leaves at his death. If the interest in question passes from the owner presently, while he remains alive, the transfer is inter vivos and not testamentary.[1] *Bromley* v. *Mitchell,* 155 Mass. 509. *Bone* v. *Holmes,* 195 Mass. 495, 506. *Tewksbury* v. *Tewksbury,* 222 Mass. 595. *Battles* v. *Millbury Savings Bank,* 250 Mass. 180. *O'Loughlin* v. *Prendergast,* 269 Mass. 41. *Murphy* v. *Smith,* 291 Mass. 93. *Greeley* v. *O'Connor,* 294 Mass. 527. *Legro* v. *Kelley,* 311 Mass. 674, 676, 677. *Roberts* v. *Taylor,* 300 Fed. 257, 260, 261. *Adams* v. *Hagerott,* 34 Fed. (2d) 899. *Cramer* v. *Hartford-Connecticut Trust Co.* 110 Conn. 22, 28, 29. *McCarthy* v. *Pieret,* 281 N. Y. 407. *National Newark & Essex Banking Co.* v. *Rosahl,* 97 N. J. Eq. 74. *Siter* v. *Hall,* 220 Ky. 43. *Wilcox* v. *Hubbell,* 197 Mich. 21. *Haulman* v. *Haulman,* 164 Iowa, 471, 479. *Tennant* v. *John Tennant Memorial Home,* 167 Cal. 570.

In some cases in this court it has apparently been thought of consequence that the settlor sought to avoid making a will, or to "evade" or "circumvent" the statutory requirements for a will, or to make a disposition of his property that would make a will unnecessary and in a popular sense would be a substitute for a will. We deem such considerations immaterial. The law prohibits only an unattested disposition that takes effect in a testamentary manner. If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of his practical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain the practical advantages of a will without making one is immaterial. *Perry* v. *Cross,* 132 Mass. 454. *Greeley* v. *O'Connor,* 294 Mass. 527, 533. *Nichols* v. *Emery,* 109 Cal. 323, 331, 332. *Bear* v. *Milliken Trust Co.* 336 Ill. 366, 384, 73 Am. L. R.

---

[1] The validity of a conveyance delivered presently in escrow, beyond the control of the grantor, but not to be delivered to the grantee until the death of the grantor, is established. *Tewksbury* v. *Tewksbury,* 222 Mass. 595, 598. *Wilson* v. *Jones,* 280 Mass. 488. Scott, Trusts (1939) § 56.1. Bogert, Trusts (1935) § 103, page 334. 16 Am. Bar Asso. Journal, 779. Compare *Stratton* v. *Athol Savings Bank,* 213 Mass. 46; *Russell* v. *Webster,* 213 Mass. 491.

173, 187.  Scott, Trusts (1939) § 57.1.  Bogert, Trusts (1935) § 103, page 332.  Scott, 43 Harv. Law Rev. 521, 528.  Leaphart, 78 Univ. of Pa. Law Rev. 626.

We take up in order the provisions relied on by the legatees.

(a) Nicholls reserved to himself not only a life interest but also a power of appointment, subject to the life interests of himself and Sophia Brown, in favor of "such person, persons or corporation" as he might select, and the trustees were to pay over all the trust property accordingly upon the deaths of both Nicholls and Sophia Brown.

No one contends that the reservation by a settlor of an interest for his life, taken by itself, impairs the validity of a trust.  *Viney* v. *Abbott*, 109 Mass. 300, 303.  *Perry* v. *Cross*, 132 Mass. 454.  *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499, 502.  *Jones* v. *Old Colony Trust Co.* 251 Mass. 309, 312.  *Scanzo* v. *Morano*, 284 Mass. 188, 194.  *Buteau* v. *Lavalle*, 284 Mass. 276, 278.  *O'Hara* v. *O'Hara*, 291 Mass. 75, 78.  *Rock* v. *Rock*, 309 Mass. 44, 48.

As to the added power of appointment, it is true that the actual exercise of a power of appointment may sometimes have the result, even the unintended result, of making the property appointed the property of the donee of the power, especially for the benefit of his creditors.  *Clapp* v. *Ingraham*, 126 Mass. 200.  *Vinton* v. *Pratt*, 228 Mass. 468.  *Shattuck* v. *Burrage*, 229 Mass. 448.  *Hill* v. *Treasurer & Receiver General*, 229 Mass. 474.  *Hogarth-Swann* v. *Weed*, 274 Mass. 125, 129.  *State Street Trust Co.* v. *Kissel*, 302 Mass. 328.  *Old Colony Trust Co.* v. *Allen*, 307 Mass. 40.  *Pitman* v. *Pitman*, 314 Mass. 465.  But the power itself, however general, is not property, even though the donee of the power is also the settlor and the life beneficiary.[1]  *Crawford* v.

---

[1] But for the purpose of taxation the exercise or nonexercise of a general power of appointment may be treated as property, or the property may be treated as owned by the person having such a power.  *Chase National Bank* v. *United States*, 278 U. S. 327.  *Curry* v. *McCanless*, 307 U. S. 357, 371.  *Graves* v. *Elliott*, 307 U. S. 383, 386.  *Pearce* v. *Commissioner of Internal Revenue*, 315 U. S. 543, 544.  *Graves* v. *Schmidlapp*, 315 U. S. 657, 141 Am. L. R. 948.  *Chickering* v. *Commissioner of Internal Revenue*, 118 Fed. (2d) 254, 139 Am. L. R. 508.  See also *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 294 Mass. 551, 556, relating to a power to revoke or alter a trust.  Compare *Welch* v. *Commissioner of Corporations & Taxation*,

*Langmaid,* 171 Mass. 309, 311. *Emmons* v. *Shaw,* 171 Mass. 410. *Shattuck* v. *Burrage,* 229 Mass. 448, 451. *Hill* v. *Treasurer & Receiver General,* 229 Mass. 474, 476. *Minot* v. *Paine,* 230 Mass. 514, 518, 519. *Slayton* v. *Fitch Home, Inc.* 293 Mass. 574, 580. *Warren* v. *Sears,* 303 Mass. 578, 583. *Commissioner of Corporations & Taxation* v. *Baker,* 303 Mass. 606, 612. *Pitman* v. *Pitman,* 314 Mass. 465. Compare Am. Law Inst. Restatement: Property, §§ 327–331; Scott, Trusts (1939) §§ 58.5, 156, 330.12. And "where an estate is given over in default of appointment, the nature of the estate of the remaindermen is not affected by the power of disposition until that power is exercised." *Crawford* v. *Langmaid,* 171 Mass. 309, 311. *Mackernan* v. *Fox,* 220 Mass. 197, 200. *Whipple* v. *Fairchild,* 139 Mass. 262, 265. *Dolan's Estate,* 279 Penn. St. 582, 589. *Central Trust Co.* v. *Watt,* 139 Ohio St. 50, 59.

Accordingly, where a settlor reserves to himself not only a life interest but also a general power of appointment, the exercise of which would defeat provisions for the distribution of the trust property in default of appointment, the existence of that power does not make the trust property the property of the settlor nor make testamentary the provisions made in default of appointment.[1]  *Albee* v. *Holmes,*

---

309 Mass. 293, 297, et seq. (power to change life insurance beneficiary and to revoke or alter trust).

So, too, in bankruptcy the trustee in bankruptcy is vested with all "powers which he [the bankrupt] might have exercised for his own benefit, but not those which he might have exercised solely for some other person." Bankruptcy Act, § 70a (3) (U. S. C. Title 11, § 110 (a) (3), as amended June 22, 1938, c. 575, § 1 [52 U. S. Sts. at Large, 879, 880]). This seems not to apply to powers exercisable by will. *Montague* v. *Silsbee,* 218 Mass. 107, 111. *Forbes* v. *Snow,* 245 Mass. 85, 93. But it seems to apply to a general power, exercisable by an instrument inter vivos, to appoint, or to revoke a trust. 4 Collier, Bankruptcy (14th ed. 1942) 992. *Board of Trade of Chicago* v. *Johnson,* 264 U. S. 1. *Cohen* v. *Samuels,* 245 U. S. 50. *Cohn* v. *Malone,* 248 U. S. 450. Am. Law Inst. Restatement: Property, § 331. Griswold, 52 Harv. Law Rev. 929. Leach, 52 Harv. Law Rev. 961. Alexander, 56 Harv. Law Rev. 742.

These are exceptions to the general rule that a power of appointment, or a power of revocation of a trust (Scott, Trusts [1939] §§ 330, 330.12), is not property, and cannot be reached by creditors. Am. Law Inst. Restatement: Property, §§ 327–331.

[1] As to the power to change the beneficiary in a life insurance policy, see *Tyler* v. *Treasurer & Receiver General,* 226 Mass. 306, 309; *Goldman* v. *Moses,* 287 Mass. 393, 396; *Tolman* v. *Crowell,* 288 Mass. 397, 400; *Kruger* v. *John Hancock Mutual Life Ins. Co.* 298 Mass. 124, 126; *Ponlain* v. *Sullivan,* 308 Mass. 58; *Welch* v. *Commissioner of Corporations & Taxation,* 309 Mass. 293, 297, et seq.; Scott, Trusts (1939) § 57.3.

114 Mass. 470. *Crawford* v. *Langmaid,* 171 Mass. 309, 311.
*Sands* v. *Old Colony Trust Co.* 195 Mass. 575. *Welch* v.
*Commissioner of Corporations & Taxation,* 309 Mass. 293,
297, et seq. Scott, Trusts (1939) §§ 57.3, 127.1.

(b) Nicholls reserved to himself also power to "alter,
amend or revoke" the trust. The power to revoke, if not
a kind of power of appointment (Am. Law Inst. Restate-
ment: Property, § 318, comment i; *Old Colony Trust Co.* v.
*Gardner,* 264 Mass. 68; *Saltonstall* v. *Treasurer & Receiver
General,* 256 Mass. 519, 524; *State Street Trust Co.* v. *Crocker,*
306 Mass. 257, 262, 128 Am. L. R. 1166, 1171; *Central
Trust Co.* v. *Watt,* 139 Ohio St. 50, 59), is akin to such a
power. It is not property, and apart from the bankruptcy
act cannot be reached by creditors. Am. Law Inst. Re-
statement: Trusts, § 330, comment o. Scott, Trusts (1939)
§ 330.12. *Murphey* v. *C. I. T. Corp.* 347 Penn. St. 591, 595.
Until a power to revoke is exercised, the interests created
by the trust instrument remain unaffected. *Old Colony
Trust Co.* v. *Gardner,* 264 Mass. 68, 70.

The reservation by the settlor, in addition to an interest
for life, of a power to revoke the trust, did not make incom-
plete or testamentary the gift over to the statutory next of
kin. Am. Law Inst. Restatement: Trusts, §§ 37, 57, 57 (1).
Scott, Trusts (1939) §§ 37, 57.1, 330.12. *Tompson* v. *Browne,*
3 Myl. & K. 32. *Sheldon* v. *Sheldon,* 1 Rob. Eccl. 81. *Stone*
v. *Hackett,* 12 Gray, 227, 232. *Davis* v. *Ney,* 125 Mass. 590,
592. *Pingrey* v. *National Life Ins. Co.* 144 Mass. 374, 382.
*Kendrick* v. *Ray,* 173 Mass. 305, 310. *Kelley* v. *Snow,* 185
Mass. 288, 297, 298. *Seaman* v. *Harmon,* 192 Mass. 5, 8.
*O'Hara* v. *O'Hara,* 291 Mass. 75, 78. *State Street Trust Co.*
v. *Crocker,* 306 Mass. 257, 259. *Greeley* v. *Flynn,* 310 Mass.
23, 28. *Cramer* v. *Hartford-Connecticut Trust Co.* 110 Conn.
22, 73 Am. L. R. 201, and note. *Talbot* v. *Talbot,* 32 R. I.
72. *Cleveland Trust Co.* v. *White,* 134 Ohio St. 1, 118 Am.
L. R. 475, and note. *Central Trust Co.* v. *Watt,* 139 Ohio St.
50. *Goodrich* v. *City National Bank & Trust Co.* 270 Mich.
222. *Rose* v. *Guardian Trust Co.* 300 Mich. 73.

The same is true, a fortiori, of a reservation of the lesser
powers to alter or amend the trust, or to withdraw principal

from it, either with or without the consent of the trustee. Obviously an exercise of the power to revoke would enable the settlor to establish a new trust changed as he might desire. There is no reason why he may not reserve the right to take a short cut by altering or amending the original trust instrument. *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston,* 308 Mass. 1, 11. Scott, Trusts (1939) §§ 331.1, 331.2. The reservation of such powers does not make testamentary a gift over to the statutory next of kin. Am. Law Inst. Restatement: Trusts, §§ 37, 330, comment n, 331. Scott, Trusts (1939) §§ 37, 57.1, 330.11, 331–331.2. *Lovett* v. *Farnham,* 169 Mass. 1. *Kelley* v. *Snow,* 185 Mass. 288, 297, 298. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309, 313. *Roche* v. *Brickley,* 254 Mass. 584. *Coolidge* v. *Brown,* 286 Mass. 504, 507. *State Street Trust Co.* v. *Crocker,* 306 Mass. 257, 259, 128 Am. L. R. 1166, 1170. *Greeley* v. *Flynn,* 310 Mass. 23. *Beirne* v. *Continental-Equitable Title & Trust Co.* 307 Penn. St. 570.

(c) The trust instrument contained this provision: "During the life of Louis Gregg Neville of Wellesley, Massachusetts, the trustees are specifically directed without liability for any loss or depreciation which may result therefrom, to hold, retain, invest and reinvest the trust property solely in accordance with the written instructions of said Louis Gregg Neville, it being the intention and desire of the donor to vest in said Louis Gregg Neville the absolute control over the investment of the trust property held hereunder at any time during the life of said Louis Gregg Neville or until he shall notify the trustees in writing that he no longer wishes to instruct, direct and control the investment of the trust property. The said Louis Gregg Neville may charge any commissions due him on account of any investment of trust property made through him, and may take any profit accruing to him as a result of the purchase or sale by the trustees of investments directed by him, and the trustees are directed to pay such commission and profit."

Neville was not, as contended by the legatees, thereby given a right to all capital gains, so that the trust could never keep any. He was a dealer and broker in securities.

As such he doubtless profited by commissions on purchases and sales made by him as broker. Where he bought or sold as principal, doubtless he made a profit. The trust instrument provided merely that he might receive such commissions and profits though in full control of the investments.

The powers given to Neville had little or no tendency to show that the trust instrument was to take effect in a testamentary manner. They did not make the trust a merely passive one. Important duties were left for the trustees. We think that the powers given to Neville did not impair the validity of the gift over to the statutory next of kin of Nicholls. Am. Law Inst. Restatement: Trusts, § 37. Scott, Trusts (1939) § 185.

But the legatees contend that by reserving power to alter, amend or revoke the trust the settlor made it possible for him as a practical matter to dominate Neville, and that the power to control the investments was in effect reserved to Nicholls himself. We assume without deciding that this contention is true. It does not follow that the gift over to the statutory next of kin is therefore testamentary and void. We need not decide whether the trust would have been invalid had the trustees been reduced to passive impotence, or something near it. A reservation by a settlor of the power to control investments does not impair the validity of a trust. Am. Law Inst. Restatement: Trusts, §§ 37, 57 (2), (3). Scott, Trusts (1939) §§ 37, 57.2, 185. *Talbot* v. *Talbot*, 32 R. I. 72. *Beirne* v. *Continental-Equitable Title & Trust Co.* 307 Penn. St. 570. *Pinckney* v. *City Bank Farmers Trust Co.* 249 App. Div. (N. Y.) 375. *Bear* v. *Milliken Trust Co.* 336 Ill. 366, 73 Am. L. R. 173, and note. *Cleveland Trust Co.* v. *White*, 134 Ohio St. 1, 118 Am. L. R. 475, and note. *Central Trust Co.* v. *Watt*, 139 Ohio St. 50. *Goodrich* v. *City National Bank & Trust Co.* 270 Mich. 222. *Rose* v. *Union Guardian Trust Co.* 300 Mich. 73. *Keck* v. *McKinstry*, 206 Iowa, 1121. *Whalen* v. *Swircin*, 141 Neb. 650. 38 Yale Law Jour. 1135. In *Greeley* v. *Flynn*, 310 Mass. 23, the settlor was herself the trustee and had every power of control, including the right to with-

draw principal for her own use. Yet the gift over at her death was held valid and not testamentary.

It remains to speak of one Massachusetts case which has been thought inconsistent with the result here reached. In *McEvoy* v. *Boston Five Cents Savings Bank,* 201 Mass. 50, a wife conveyed under seal to a trustee a savings bank deposit, in trust to pay her whatever she might demand during her life, and at her death, if enough should remain, to pay to her husband a small sum weekly, and at his death to divide any remaining amount among certain cousins. She expressly reserved a power of revocation. The husband survived the wife. After his death the trustee sued the savings bank for the deposit. The administrator of the wife's estate appeared as adverse claimant, and a decision of the trial judge in his favor was affirmed by this court. The trustee admitted in his testimony that the wife told him that she intended by the trust instrument "to dispose of the property after she was dead as well as while she was living," and that "she intended this instrument in place of any will she might leave." This testimony was taken by this court as true, since the trial judge had found for the claimant. The opinion holds first that as matter of law the provisions of the trust instrument for the disposition of the property after the death of the settlor were testamentary, and then adds that if that be thought too favorable to the claimant the decision of the trial judge for the claimant should be supported on the ground that "the evidence justified a finding by the trial judge that the paper was intended as a mere testamentary disposition of property, and not as a creation of a trust for any other purpose." In *Jones* v. *Old Colony Trust Co.* 251 Mass. 309, the *McEvoy* case is distinguished and supported on the ground that there "the nominal trustee had none of the ordinary powers of a trustee and was in substance and effect only an agent of the donor." See Scott, Trusts (1939) § 57.2.

In the *McEvoy* case the terms of the trust were fully stated in a formal document. Nothing was left to oral testimony or to inference from circumstances. The question whether the trust instrument was testamentary was

to be determined solely by its terms. That the power of revocation did not make it testamentary, had been decided in *Stone* v. *Hackett*, 12 Gray, 227, 232. That the power to withdraw principal did not make it testamentary, had been decided in *Davis* v. *Ney*, 125 Mass. 590. Those cases were not cited. The trust instrument in the *McEvoy* case does not appear testamentary to us. The alternative or additional ground of decision implies that a purpose on the part of a settlor to employ a trust deed in order to avoid making a will makes testamentary and void what otherwise would be a valid settlement inter vivos. We think that that proposition is not law. We do not agree with the characterization of the *McEvoy* case, contained in the opinion in the *Jones* case, whereby the *McEvoy* case was distinguished and supported. The case of *McEvoy* v. *Boston Five Cents Savings Bank*, 201 Mass. 50, is overruled.

It may be added, that the principles of this opinion are not necessarily controlling in cases which concern the effectiveness of a voluntary trust in subjecting a settlor to a gift tax, or in freeing him from income taxes or his estate or the beneficiaries from estate or succession taxes, with respect to the trust property. *Helvering* v. *F. & R. Lazarus & Co.* 308 U. S. 252. *Griffiths* v. *Commissioner of Internal Revenue*, 308 U. S. 355. *Helvering* v. *Clifford*, 309 U. S. 331. *Harrison* v. *Schaffner*, 312 U. S. 579, 581, 582. *Helvering* v. *Stuart*, 317 U. S. 154, 168. *Welch* v. *Commissioner of Corporations & Taxation*, 309 Mass. 293, 298, 299.

*Decree affirmed.*