FRANCIS T. LEAHY, administrator, *vs.* OLD COLONY TRUST COMPANY & others.

Suffolk.    April 3, 4, 1950. — June 1, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Trust,* Express trust: validity; Revocation.

Provisions of an indenture of trust, not executed in the manner required for a will, whereby the settlor, who was one of two trustees and the life beneficiary, reserved to herself the powers to withdraw principal from the trust and to amend or revoke the indenture and authorized her cotrustee to act under her directions in the investment of the trust funds, did not make the indenture invalid as an attempted will with respect to dispositions of the trust property effective upon her death.

A power reserved in an indenture of trust to the settlor to amend or revoke the indenture "during . . . [her] lifetime" by an instrument in writing could not be exercised by her will.

PETITION, filed in the Probate Court for the county of Suffolk on August 26, 1947.

The case was heard by *Dillon,* J.

*F. T. Leahy,* for the petitioner.

*R. C. Evarts,* for the respondents.

LUMMUS, J.    This is a petition to the Probate Court, filed on August 26, 1947, by the ancillary administrator with the will annexed of the estate of Jennie M. Luhrs, late of Pully, Canton de Vaud, Switzerland, to obtain a decree that said will operated as an amendment to or revocation of an indenture of trust of which Jennie M. Luhrs and the

respondent Old Colony Trust Company were trustees. On March 31, 1949, a decree was entered, adjudging that said will did not operate as an amendment to or revocation of said indenture of trust. The petitioner appealed. The case comes here upon a report of the evidence and a report of the material facts.

On April 4, 1922, Jennie M. Luhrs, then of Lausanne, Switzerland, created the trust in question with herself and Old Colony Trust Company as trustees. The trust indenture provided that the income should be paid to Jennie M. Luhrs during her life. At her death various payments, amounting to $37,000 in all, were to be made out of the principal to various individual and corporate beneficiaries, and the residue was to be paid to Anne A. Craig of Belfast, Maine, or her heirs. In the investment of the trust funds Old Colony Trust Company was authorized to act under the directions of Jennie M. Luhrs. Any trustee might resign by giving notice in writing to the other trustee, and any vacancy might be filled by written appointment signed by Jennie M. Luhrs. During a vacancy, the other trustee might act as sole trustee. The trust indenture might be amended or revoked at any time "during the lifetime of said Jennie M. Luhrs by an instrument in writing signed by her, and also by said Anne A. Craig, if she be living."

Jennie M. Luhrs and Anne A. Craig joined in four amendments of the trust indenture. The result of these amendments was to strike out two beneficiaries which together at the death of Jennie M. Luhrs were to receive $9,000, and to provide that Jennie M. Luhrs might withdraw from the principal upon her request and that of Anne A. Craig. Anne A. Craig died prior to October 15, 1945.

The indenture of trust was not executed as is required for a will. The petitioner contends that it was an attempted will, and, being testamentary in character, cannot be valid as creating a trust inter vivos. He cites Restatement: Trusts, § 57 (2), which says, "Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also

such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with." Professor Scott (Trusts [1939] § 330.4) says, "If the owner of property transfers it to a trustee but no interest, vested or contingent, passes before his death to any beneficiary other than himself, the trust is testamentary, and he can at any time revoke it." See also Bogert, Trusts & Trustees (1935) §§ 103, 104. In this case it is not true that "no interest" passed to any beneficiary other than Jennie M. Luhrs before her death, for the interests of all the beneficiaries vested at the creation of the trust, subject to being divested by the exercise of the reserved power to amend or revoke the indenture of trust. The reservation of that power did not make the trust testamentary. *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 474, 475. *Kerwin* v. *Donaghy*, 317 Mass. 559, 567. Neither did the reservation of the right in Mrs. Luhrs to withdraw principal from the trust. *Greeley* v. *Flynn*, 310 Mass. 23, 28. In the investment of the trust funds Old Colony Trust Company was authorized, but not required, to act under the directions of Mrs. Luhrs. It was not reduced to impotence, but retained important powers, including that of deciding whether or not to follow the directions of Mrs. Luhrs. The provision in question did not make the trust testamentary. "A reservation by a settlor of the power to control investments does not impair the validity of a trust." *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 476. The first contention of the petitioner cannot be sustained.

On October 15, 1945, Jennie M. Luhrs, at Pully in Switzerland, made her will in the German language of which the following is a translation: "Since the family of my beloved husband has become completely impoverished because of the war, I revoke all my former testamentary dispositions, and appoint my nephew, the Hollander, Oswald Molsen, in the Hague, 40 V. boetzelaerban, as my sole heir, my entire

property to go to him after my death, all my legal rights, claims and partnership rights here and in America." Mrs. Luhrs died about two months after she made the will, which was proved in Switzerland, and of which ancillary probate was granted in Massachusetts. The second contention of the petitioner is that the will revoked the trust.

Plainly Jennie M. Luhrs could not alter or revoke the trust except in accordance with some power to do so reserved in the trust instrument. *Viney* v. *Abbott*, 109 Mass. 300. *Sewall* v. *Roberts*, 115 Mass. 262, 272, 273. *Keyes* v. *Carleton*, 141 Mass. 45, 49. *Thurston, petitioner*, 154 Mass. 596. *Taylor* v. *Buttrick*, 165 Mass. 547, 549. *Lovett* v. *Farnham*, 169 Mass. 1, 2, 3. *Sands* v. *Old Colony Trust Co.* 195 Mass. 575, 577. *Gorey* v. *Guarente*, 303 Mass. 569, 574. Note, 38 A. L. R. 941.

The power of amendment or revocation, reserved in the trust instrument, was a power to do so only "during the lifetime of said Jennie M. Luhrs." A will does not take effect during the lifetime of the testator, but operates only from and after his death. *Pratt* v. *Dean*, 246 Mass. 300, 308. *Gray* v. *McCausland*, 314 Mass. 743, 749. In *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 470–471, this court said, "The distinguishing feature of a testamentary disposition is that it remains ambulatory until the death of the one who makes it. Until he dies, his title remains unimpaired and unaffected. A testamentary disposition becomes operative only upon and by reason of the death of the owner who makes it. It operates only upon what he leaves at his death. If the interest in question passes from the owner presently, while he remains alive, the transfer is inter vivos and not testamentary."

Accordingly, it is settled that a power to revoke "during the lifetime" of the settlor, which means by a revocation taking effect before the death of the settlor, cannot be exercised by a will that in the nature of things cannot take effect before the death of the testator. In *Kelley* v. *Snow*, 185 Mass. 288, Mary Ann Snow conveyed personal property to one Kelley in trust, reserving "the power to change the fol-

lowing dispositions at any time upon written notice to said Kelley." She gave him no such notice, but by will attempted to cancel and revoke such dispositions. This court said (page 299), "The attempted revocation of the trust was void because made by will and no notice was given to Kelley during the life of the donor." In *Stone* v. *Hackett*, 12 Gray, 227, one Kittredge established a trust, reserving the right to modify or revoke it. It was held that such a reservation could not be exercised after his death, as by a will. The principle is stated in Restatement: Trusts, § 330, comment j, as follows: "If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will." In accord are the following cases. *Gall* v. *Union National Bank*, 203 Ark. 1000. *Broga* v. *Rome Trust Co.* 151 Misc. (N. Y.) 641. *Chase National Bank* v. *Tomagno*, 172 Misc. (N. Y.) 63. *Mayer* v. *Tucker*, 102 N. J. Eq. 524.

The appellant argues that unless the will operates as an amendment to or revocation of the trust, it can have no effect at all, and that it should be given some effect. But there was evidence that Mrs. Luhrs had interests in a trust in the First National Bank of Belfast, Maine, and one in the First National Bank of Portland, Oregon, the terms of which did not appear, and a small deposit in The National Shawmut Bank of Boston, besides jewelry, furniture and bank deposits in Switzerland. So far as appears, the will could operate on such property.

*Decree affirmed.*